Merrimack
No. 80-133

## Henry and Murphy, Inc.

v.

## Town of Allenstown

December 29, 1980

*Sheehan, Phinney, Bass & Green,* of Manchester (*Daniel W. Sklar* orally), for the plaintiff.

*Soule, Leslie, Bronstein & Zelin,* of Salem (*Gerald M. Zelin* orally), for the defendant.

GRIMES, C.J.   This appeal arises out of a petition for declaratory judgment (RSA 491:22) to determine whether the plaintiff developer, Henry and Murphy, Inc., has gained such vested rights in its subdivision that it need not comply with the defendant Town of Allenstown's current zoning ordinance as to lot size. We hold that it has.

In 1966, the plaintiff purchased a tract of land located in Allenstown with the intention of subdividing and developing it as a residential area. On September 20, 1968, the plaintiff recorded a subdivision plan with the Merrimack County Registry of Deeds. That plan subdivided the property in question into fifty house lots. At that time, the town had not yet empowered a planning board to exercise subdivision review pursuant to RSA 36:2 *et seq.*, and the plaintiff therefore had the subdivision plan approved by the town selectmen before filing it with the registry of deeds. The plaintiff then began to build one-family and multi-family homes on the property.

In 1970, the town appointed a planning board. That same year, the town adopted a zoning ordinance requiring lots such as those in the plaintiff's subdivision to have a minimum lot area of 40,000 square feet; the town's 1978 zoning ordinance contains the same lot area requirement. The plaintiff's lots are each approximately

10,000 square feet in area and do not comply with the ordinance. Nevertheless, between 1970 and 1975, the town planning board approved four amendments to the original subdivision plan.

As of June 1, 1978, the plaintiff had developed and sold thirty-four of the lots in the subdivision and had constructed the streets and the water and sewer systems necessary for those lots. Sixteen lots remain undeveloped. Since 1970, the town has taxed the plaintiff on each individual lot at the rates established for building lots.

In 1978, the plaintiff contracted to sell the sixteen remaining lots to Real Estate Concepts, Inc. (REC). In their purchase and sale agreement the parties agreed that REC's performance would be conditioned upon sewer approval and confirmation of the subdivision plan by the town planning board. The board refused to approve the subdivision plan on the ground that the undeveloped lots did not meet the lot area requirement of the town zoning ordinance.

The plaintiff then brought this action to determine whether it has sufficient vested rights in the subdivision to prevent the minimum lot area requirement of the zoning ordinance from being enforced with respect to the sixteen undeveloped lots. The Master (*Robert A. Carignan,* Esq.) ruled that the plaintiff had not acquired vested rights in the entire subdivision under either the common law or RSA 36:24-a (Supp. 1979). The master's report was approved by *Cann,* J., and the plaintiff appealed.

In this State, the common-law rule is that "an owner, who, relying in good faith on the absence of any regulation which would prohibit his proposed project, has made substantial construction on the property or has incurred substantial liabilities relating directly thereto, or both, acquires a vested right to complete his project in spite of the subsequent adoption of an ordinance prohibiting the same." *Gosselin v. Nashua,* 114 N.H. 447, 451, 321 A.2d 593, 596 (1974) *quoting Piper v. Meredith,* 110 N.H. 291, 299, 266 A.2d 103, 109 (1970). The plaintiff argues that it has acquired vested rights to develop the entire subdivision without regard to the restrictive zoning ordinance by reason of its having completed approximately seventy percent of the improvements shown on the original subdivision plan in good faith reliance upon the town's approvals of that plan between 1968 and 1975. The defendant, on the other hand, contends that vested rights attach only to improvements and that, because no improvements installed anywhere in the subdivision would have to be changed or abandoned if the lot sizes were increased in the undeveloped portion of the subdivision, the lot

area requirement of the zoning ordinance may be applied to the remaining lots.

■ ■ We cannot agree with the defendant's restrictive interpretation of New Hampshire's common-law doctrine of vested rights as it applies to the facts in this case. A landowner who, in good faith, makes substantial construction on his property "acquires a vested right to complete his *project*. . . ." (Emphasis added.) *Gosselin v. Nashua*, 114 N.H. at 451, 321 A.2d at 596; *Piper v. Meredith*, 110 N.H. at 299, 266 A.2d at 109. The word "project" in this context does not, as the defendant apparently maintains, refer to each individual lot or building. Rather, it is commonly defined as "an undertaking devised to effect the reclamation or improvement of a particular *area* of land." (Emphasis added.) WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY at 1813 (Unabridged 1961).

■ At least when the owner has undertaken construction on his land, notwithstanding our decision in *Piper*, we think that the better rule is that when zoning restrictions substantially reduce the value of land by prohibiting its use for the purpose for which it was purchased, this diminution in value may also be considered in determining whether the plaintiff's rights have vested. *Piper v. Meredith, supra* at 303, 266 A.2d at 111 (*Grimes*, J., dissenting); *see Tremarco Corp. v. Garzio*, 32 N.J. 448, 457–58, 161 A.2d 241, 245–46 (1960). Similarly, the fact that the lots in question have been separately assessed and taxed accordingly, although not a conclusive factor, does have some bearing on whether the lots may continue to be treated as separate entities. *Robillard v. Town of Hudson*, 120 N.H. 477, 480, 416 A.2d 1379, 1381 (1980).

■ In this case, the plaintiff initially invested in the property comprising the subdivision with a view toward the use of the entire property as a subdivision. To date, it has developed approximately seventy percent of the subdivision in accordance with its original plan in good faith, reasonable reliance upon the town's ongoing approval of that plan over a period of years. It is clear that since the time it purchased the property in 1966, the plaintiff has viewed and developed the subdivision as a single homogeneous project. It would be unfair and unreasonable to say, at this time, that the plaintiff and its successors in interest may not develop the remaining lots in conformity with the distinct character of the developed portion of the subdivision in which they are located. *See Piper v. Meredith*, 110 N.H. at 299–300, 266 A.2d at 109; *Tremarco Corp. v. Garzio*, 32 N.J. at 457, 161 A.2d at 245.

Furthermore, if the plaintiff and its successors in interest are required to comply with the lot size requirement, the undeveloped property will comprise only four house lots instead of sixteen. There is evidence that the undeveloped land in its present state is worth $64,000 (sixteen lots at $4,000 per lot) but that the land divided into four 40,000 square foot lots would be worth only approximately $32,000 (four lots at $8,000 per lot). Because of this difference in value, we also assume that the plaintiff's tax liability for the period 1970–1978 was greater than it would have been had the land been taxed on the basis of the lot sizes the town now seeks to require of the plaintiff. Moreover, there was testimony that the plaintiff, in order to realize a reasonable profit from the sale of four homes on 40,000 square foot lots, would have to build much larger and higher-priced homes than those in the rest of the subdivision but that by reason of the character of the rest of the subdivision and other factors the larger homes would be unmarketable. These factors simply demonstrate the unfairness of compelling the plaintiff to comply with the town's lot size requirement.

■■ We therefore hold that the plaintiff has proceeded so far with the development of the subdivision as a whole as to give the plaintiff and its successors a vested right to develop the remaining sixteen lots notwithstanding the minimum lot area provisions of the town zoning ordinance. This does not mean, however, that the plaintiff and its successors in interest may disregard the town zoning ordinance in its entirety. In addition to the lot size requirement, that ordinance also restricts construction to that of one-family and two-family homes. This restriction is reasonable and does not touch upon any vested rights of the plaintiff. Accordingly, although the plaintiff may develop the remaining sixteen lots without regard to the town's lot area requirement, it may only build one-family and two-family homes on those lots.

*Reversed.*

All concurred.