558

Rockingham
No. 99-527

THOMAS MORGENSTERN

v.

TOWN OF RYE

Argued: September 19, 2001
Opinion Issued: April 15, 2002

*Gottesman and Hollis, P.A.,* of Nashua (*Anna Barbara Hantz* and *Morgan A. Hollis* on the brief, and *Mr. Hollis* orally), for the plaintiff.

*Michael L. Donovan,* of Concord, by brief and orally, for the defendant.

*Devine, Millimet & Branch, P.A.,* of Manchester (*Daniel E. Will* on the brief) and *New England Legal Foundation,* of Boston, Massachusetts (*Michael E. Malamut* on the brief), for New England Legal Foundation, as *amicus curiae.*

BROCK, C.J. The plaintiff, Thomas Morgenstern, appeals orders of the Superior Court (*Murphy,* J.) declaring section 601 of the Rye Zoning Ordinance valid on its face and as applied to his property. The plaintiff also appeals the court's order upholding the Town of Rye Zoning Board of Adjustment's (ZBA) decision not to hear his revised application for approval to build a house on his lot. The defendant, Town of Rye (town), cross-appeals, arguing that the plaintiff's action should have been dismissed because the plaintiff failed to timely appeal adverse decisions of the ZBA. We vacate and remand.

In September 1992, the plaintiff purchased land in Rye for $20,000. Estimates were made that anywhere between twenty-seven and eighty percent of the parcel consisted of wetlands. The plaintiff's lot is part of the Myrica-By-The-Sea residential subdivision plan that had been approved by the town in 1967 and recorded in the registry. At that time, the plaintiff's lot complied with the town's minimum square footage and frontage requirements for residential property. By 1971, all of the roads in the development had been accepted by the town at town meeting. By 1975, all but four of the twenty lots had either been developed or received building permits. In 1975, the town increased the required lot size and frontage, so that the current requirement for the plaintiff's lot is 44,000 square feet with 150 feet of frontage. Thus, the plaintiff's lot was rendered nonconforming as to minimum size and frontage.

In 1993, the plaintiff applied for a variance to build a single-family dwelling on the uplands portion of his lot pursuant to section 601 of the town's zoning ordinance. Section 601, which governs construction on nonconforming lots and was adopted in 1985, provides:

> In any district in which single family or two family dwellings are permitted, a dwelling and customary accessory buildings may be erected, as a variance obtained pursuant to Article VII, on any lot which was a lot of record on the effective date of this Ordinance, earlier variations thereof, or future amendments thereto, even though such lot fails to meet the district requirements for area or frontage or depth.

The ZBA held a hearing on the variance, and, based upon the five criteria for approving a variance, voted unanimously to deny the application. The plaintiff neither requested a rehearing nor appealed the decision. Instead, in December 1994, the plaintiff applied for a building permit rather than a variance, asserting that no variance was required because the parcel was a grandfathered nonconforming lot.

The building inspector denied the plaintiff's application on the grounds that a use variance pursuant to section 601 was required and had been denied. The plaintiff appealed the building inspector's decision, which was upheld by the ZBA in 1995. Although the plaintiff filed a timely request for rehearing, he did not appeal the subsequent denial of the request for rehearing. Instead, in January 1997, he filed a petition for a declaratory judgment in superior court asserting that section 601 was unconstitutional on its face and as applied to his property.

The town moved to dismiss the petition based upon the plaintiff's failure to appeal the denial of his 1995 administrative appeal to the ZBA. The superior court denied the motion to dismiss. The town then moved for partial summary judgment. The superior court ruled that the variance requirement of section 601 was not unconstitutional on its face, but left open the issue of whether it violated due process as applied to the plaintiff's property.

In 1998, while the declaratory judgment action was pending, the plaintiff filed a second variance application. The ZBA refused to consider it on the grounds that there was no material change from the first application. The plaintiff appealed to the superior court, where the action was consolidated with the declaratory judgment action. Following a bench trial, the superior court held that section 601 was not unconstitutional as applied to the plaintiff's property, and that the ZBA's decision not to consider the second application for a variance was reasonable.

On appeal to this court, the plaintiff argues that section 601 is unconstitutional on its face and as applied, and that the superior court erred when it upheld the ZBA's decision that: (1) the resubmitted plan was not materially different from the prior plan; and (2) no future application for a single family dwelling would ever be sufficiently materially different

as to warrant ZBA review. The town cross-appeals, arguing that the plaintiff's failure to appeal the 1993 and 1995 ZBA decisions bars his petition for declaratory judgment because it arises from the same factual transactions as the 1993 and 1995 decisions.

We will affirm the trial court's factual findings unless they are unsupported by the evidence, *see Carrier v. McLlarky*, 141 N.H. 738, 740 (1997), and will affirm the trial court's legal rulings unless they are erroneous as a matter of law. *See Fleet Bank-N.H. v. Chain Const. Corp.*, 138 N.H. 136, 139 (1993).

We address first the town's argument that because the plaintiff failed to appeal the ZBA's 1993 and 1995 decisions pursuant to RSA 677:4, the decisions are final decisions, and his constitutional claims are barred by the doctrine of res judicata.

■ A party may appeal an adverse zoning action by way of a statutory appeal, declaratory judgment, or an equitable proceeding. *Caspersen v. Town of Lyme*, 139 N.H. 637, 640 (1995). A facial challenge to a zoning ordinance may be initiated by way of a statutory appeal or declaratory judgment. *Id.* A challenge to a zoning ordinance as applied to a particular property may be initiated by way of a statutory appeal, declaratory judgment or equitable proceeding. *Id.* A plaintiff who chooses to initiate a declaratory judgment action to challenge the validity of a zoning ordinance may do so after the expiration of the appeal period in RSA 677:4. *See Blue Jay Realty Trust v. City of Franklin*, 132 N.H. 502, 509 (1989).

■ In support of a contrary rule, the town cites *Shepherd v. Town of Westmoreland*, 130 N.H. 542 (1988), and *Town of Auburn v. McEvoy*, 131 N.H. 383 (1988). Both cases are distinguishable from the case at bar. *Shepherd* involved the res judicata effect of a superior court decision in an appeal from the ZBA. *Shepherd*, 130 N.H. at 543. There we held that the plaintiff should have raised constitutional and inverse condemnation claims when she appealed the ZBA's decision to the superior court. *Id.* at 545. Thus, where an applicant directly appeals from the zoning decision to superior court, the doctrine of res judicata requires that all claims that could be raised, be raised therein, or be barred. In the present case, because the plaintiff did not appeal the 1993 and 1995 decisions of the ZBA, its constitutional attack on the ordinance is not barred by res judicata.

*McEvoy* specifically left open the question of whether a planning board decision should be accorded res judicata status. *McEvoy*, 131 N.H. at 385. That question was answered a year later in *Blue Jay Realty*, where we reasoned that because a collateral attack raises questions of law suited to

judicial rather than administrative treatment, collateral attacks on zoning enactments are not foreclosed by a failure to directly appeal a decision of the application of the challenged ordinance to a particular piece of property. *Blue Jay Realty*, 132 N.H. at 509-10.

██ Having concluded that the plaintiff's claims are not barred by res judicata, we now consider the plaintiff's argument that the variance requirement contained in section 601 is unconstitutional on its face. Zoning ordinances are presumed to be valid, and the challengers bear the burden of proving them unlawful. *See Town of Nottingham v. Harvey*, 120 N.H. 889, 892 (1980). A zoning ordinance will not be declared unconstitutional absent proof that its provisions are arbitrary and unreasonable and have no substantial relationship to the health, safety, morals or general welfare of the community. *See Buskey v. Town of Hanover*, 133 N.H. 318, 323 (1990).

Generally speaking, a property owner has no right to the continued existence of any particular zoning classification of his property, because all property is held in subordination to the police power of the municipality. *R.A. Vachon & Sons, Inc. v. City of Concord*, 112 N.H. 107, 110 (1972). Special problems arise, however, when zoning regulations increase frontage and area requirements and landowners are left with substandard lots. Strict and literal enforcement of stringent regulations regarding lot size would make some such lots useless to their owners and to the community, and would destroy the value of such lots, making strict application of the ordinance confiscatory. *Id.* at 113; 2 R. ANDERSON, AMERICAN LAW OF ZONING § 9.66, at 320 (4th ed. 1996). To avoid this result, some ordinances provide relief for the owner of a legally recorded lot rendered substandard by the ordinance by way of a savings clause exempting such lots from the ordinance's area and frontage requirements. *See, e.g., Town of Seabrook v. Tra-Sea Corp.*, 119 N.H. 937, 939 (1979); *Vachon*, 112 N.H. at 112.

██ While section 601 does not exempt substandard lots of record from the application of the zoning ordinance, it does allow owners of such lots to apply for a variance to build on the lot. The variance process ensures, among other things, that application of the ordinance's area and frontage requirements to a particular piece of property will not result in an unconstitutional taking. *See Bouley v. Nashua*, 106 N.H. 79, 84 (1964). Accordingly, we agree with the trial court that "[a]lthough the variance requirement of Section 601 may have a unique constitutional impact on a property owner of a nonconforming lot in a previously approved and

substantially constructed subdivision, that does not make Section 601 unconstitutional *on it[s] face.*" (Emphasis added.)

The plaintiff next argues that the ordinance is unconstitutional as applied to his property because he had a vested right to develop the lot in conformance with the zoning ordinance in effect at the time the subdivision was recorded. The plaintiff asserts that the superior court misconstrued: (1) RSA 674:39 (1996) when it held that the statute, enacted in 1975, was not retroactive to a subdivision plan of record in 1967; and (2) the vested rights doctrine when it held that the vested rights belonged only to the original developer and the successor developer, not to the lot itself.

As we have noted, property owners generally have no vested right to be free from zoning restrictions that forbid prospective uses. *See Vachon,* 112 N.H. at 110. Thus, owners of lots which are smaller than, but predate, current lot size requirements are not necessarily exempt from the ordinance provisions regulating lot size. The plaintiff argues, however, that the application of section 601 to his approved lot of record violates his statutory right to complete construction on his lot in accordance with the original approved plan. *See* RSA 674:39. The plaintiff's statutory vested rights argument is based, not on the four-year exemption provided in the statute, but on the language, "once substantial completion of the improvements as shown on the plat have occurred in compliance with the approved plat, or the terms of said approval or unless otherwise stipulated by the planning board, the rights of the owner or the owner's successor in interest shall vest and no subsequent changes in subdivision regulations or zoning ordinances shall operate to affect such improvements." RSA 674:39.

The record in the Senate on the bill adding this language to the statute in 1977 indicates that the legislature did not intend to give owners any more or any less protection under these statutory vested rights than that provided by common law. *See* N.H.S. JOUR. 2685-86 (1977). Therefore, our analysis regarding the existence of any statutory vested right is coextensive with the analysis regarding the existence of common law vested rights, and we need not consider whether the statute applies retroactively.

As a matter of New Hampshire common law, an owner who, relying in good faith on the absence of any regulation, has done substantial construction on property or who has incurred substantial liabilities relating to property, or both, acquires a vested right to complete the project in spite of the subsequent adoption of an ordinance prohibiting the use. *See Piper v. Meredith,* 110 N.H. 291, 299 (1970). Thus, the developer of a subdivision approved under a prior zoning ordinance that has undergone substantial construction under the approved plan acquires a vested right to complete the project in accordance with the original

subdivision despite the subsequent adoption of a contrary ordinance. *Henry and Murphy, Inc. v. Town of Allenstown*, 120 N.H. 910, 912-13 (1980). This right may run to the developer's successors in interest. *Id.* at 913.

The plaintiff in *Henry and Murphy* purchased a tract of land with the intention of subdividing and developing it as a residential area. *Id.* at 911. In 1968, the plaintiff recorded a subdivision plan subdividing the property into fifty house lots of approximately 10,000 square feet, and began to build one-family and multi-family homes on the property. *Id.* In 1970, the town adopted a zoning ordinance requiring lots like those in the plaintiff's subdivision to have a minimum lot area of 40,000 square feet. *Id.* By June of 1978, the plaintiff had developed and sold thirty-four of the lots in the subdivision and had constructed the water and sewer systems necessary for those lots. *Id.* at 912. Only sixteen lots remained undeveloped. *Id.* When the plaintiff contracted to sell the sixteen remaining lots, it sought, but was denied, approval of the subdivision plan on the grounds that the undeveloped lots did not meet the area lot requirement of the town zoning ordinance. *Id.*

On appeal, the plaintiff argued that it had acquired a vested right to develop the entire subdivision by reason of its having completed approximately seventy percent of the improvements shown on the original subdivision plan in good faith reliance upon the town's approval of that plan between 1968 and 1975. *Id.* We agreed, stating, "It would be unfair and unreasonable to say, at this time, that the plaintiff and its successors in interest may not develop the remaining lots in conformity with the distinct character of the developed portion of the subdivision in which they are located." *Id.* at 913.

■ In determining whether the plaintiff in the instant case had a vested right to build on the property without obtaining a variance, the trial court considered whether the plaintiff, not the developer, incurred substantial construction costs or substantial liabilities. This was error. The trial court's analysis should have focused, instead, on: (1) whether the original developer, like the developer in *Henry and Murphy*, had acquired a vested right to build on the lot; and, if so, (2) whether that vested right transferred to the plaintiff, as a successor in interest.

■ We conclude that the superior court also erred when it ruled that there was no material change between the plaintiff's 1995 and 1998 applications and that it was premature for it to find that the plaintiff would never be entitled to build a single family home on the property. Throughout the litigation in this case, the town has taken the position that

it denied the plaintiff's request for a variance because of concerns about the particular proposed structure's impact on the wetlands. Yet, when the plaintiff submitted a new application in 1998 that allegedly addressed these concerns, the ZBA declined to hear the application on the merits because it concluded that the application did not differ materially from the 1995 application. The superior court affirmed the 1998 denial, and indicated that no single family dwelling on the uplands portion of the lot would ever qualify as materially different.

On appeal, the superior court's decision will be upheld unless it is not supported by the evidence or is legally erroneous. *Peabody v. Town of Windham*, 142 N.H. 488, 492 (1997). For its part, the superior court shall not set aside or vacate the ZBA's decision "except for errors of law, unless the court is persuaded by the balance of the probabilities, on the evidence before it, that said order or decision is unreasonable." RSA 677:6 (1996). To the extent the ZBA made findings upon questions of fact properly before the court, those findings are deemed *prima facie* lawful and reasonable. *Id.*

In upholding the ZBA's decision that the plaintiff's 1998 application was not materially different in nature and degree from the 1995 variance application, the superior court relied upon our decision in *Fisher v. City of Dover*, 120 N.H. 187 (1980). The defendant in *Fisher*, desiring to convert a house into a multi-family apartment complex, applied for and obtained a use variance from the ZBA. *Id.* at 188. The plaintiff challenged the grant of the variance in superior court, and on remand from the superior court, the ZBA denied the variance application. *Id.* The defendant then filed a second application for a variance, which it conceded was substantially the same as the previous application. *Id.* The ZBA granted the variance, and the superior court upheld the decision. *Id.* On appeal, we held that the ZBA erred as a matter of law "when it approved the defendant's second application for a variance without first finding either that a material change of circumstances affecting the merits of the application had occurred or that the second application was for a use that materially differed in nature and degree from the use previously applied for and denied by the board." *Id.* at 191.

In upholding the ZBA's refusal to consider the plaintiff's 1998 application on the merits, the superior court in the present case stated:

> The evidence and testimony revealed that the second application, with its supporting documentation, asserted several differences. The changes included a new driveway design that allowed for more natural absorption of rainfall into the ground and a new . . . footprint design which no longer required a retaining wall to

protect the wetlands. The plaintiff apparently considers the engineering studies and variations on the building structure to be material changes. However, there were no changes in the neighborhood or upon the plaintiff's property between the first and second applications which would constitute a material change in circumstances [a]ffecting the merits of the application. Therefore the decision of the ZBA cannot be said to be unreasonable. Furthermore, the evidence and testimony revealed that both applications were for the same use—a single family home on the uplands portion of the property. Therefore, the Court finds and rules that the second application was not for a use that differed from its predecessor, nor were there material changes affecting the merits of the application.

It is clear from the superior court's order that it concluded that it was unnecessary to consider whether engineering studies and the variations on the building structure constituted material changes to the plaintiff's application. Given the nature of the plaintiff's initial application and the ZBA's reasons for denying the variance, this was error.

The plaintiff applied for a variance pursuant to section 601 to construct a house on his lot. The ZBA minutes and the ZBA chairman's superior court testimony reflect that when the ZBA denied the plaintiff's applications in 1993 and 1995, it was primarily concerned about the proposed structure's impact on the wetlands, the drainage impact and overcrowding. The minutes from the 1993 and 1995 ZBA hearings do not suggest that the ZBA would never grant a variance to construct a house on the plaintiff's lot. Indeed, in its pleadings submitted to the superior court, the town essentially invited the plaintiff to file a new variance application, stating, "[T]he applicant has provided no evidence that a smaller house and/or a house that did not require filling wetlands could not be built on the lot, thereby addressing the [ZBA's] concern." It was in response to this invitation that the plaintiff submitted the 1998 variance application. Unlike the defendant in *Fisher v. Dover*, the plaintiff did not merely resubmit substantially the same application for a variance, but, at the town's invitation, submitted a new proposal in an effort to meet the town's concerns.

In light of the errors identified above, we vacate the decision of the superior court and remand for further proceedings consistent with this opinion.

*Vacated and remanded.*

BRODERICK, J., sat for oral argument but did not take part in the final vote; NADEAU, DALIANIS and DUGGAN, JJ., concurred.