Strafford
No. 2001-533

AWL POWER, INC.

v.

CITY OF ROCHESTER & a.

Argued: October 17, 2002
Opinion Issued: December 9, 2002

*Cleveland, Waters and Bass, P.A.*, of Concord (*David W. Rayment* and *William B. Pribis* on the brief, and *Mr. Rayment* orally), for the plaintiff.

*Wensley, Wirth & Azarian*, of Rochester (*Danford J. Wensley* on the brief and orally), for the defendants.

*Gallagher, Callahan & Gartrell, P.A.*, of Concord (*Michael R. Callahan* and *Michael D. Ramsdell* on the brief), for the Home Builders & Remodelers Association of New Hampshire, as *amicus curiae*.

DUGGAN, J. The plaintiff, developer AWL Power, Inc., appeals an order of the Superior Court (*T. Nadeau*, J.) upholding the Rochester Planning Board's (planning board) decision to revoke the plaintiff's subdivision and site plan approvals on the ground that the plaintiff's right to complete construction had not vested. We reverse and remand.

The trial court found the following facts. The developer owns a 23.78-acre parcel of land in the City of Rochester (city). On August 31, 1987, the planning board approved a site plan for the plaintiff's predecessor in interest. Under this plan, the property would be subdivided into nineteen parcels, consisting of eighteen single-family homes and one fifty-nine-unit condominium. The approval was subject to the condition that the developer construct, at his own expense, a number of public improvements on the property, including a sidewalk, a sewer line extension, a fence and a road.

During the three years following the approval, the developer built six of the eighteen houses in its plan. The developer also spent $201,614 on the public improvements, finishing the sidewalk and sewer line construction. It also paid the city a $50,000 impact fee for off-site improvements.

In 1988, the city amended its zoning ordinance, rendering the developer's proposed condominium and many of the proposed single-family houses non-conforming uses of the property. The city, however, allowed the developer to continue the development according to the 1987 approved site plan. RSA 674:39 (1996) grants a developer a four-year exemption from subsequently enacted zoning ordinances, running from the date of the recording of the approval, provided the builder begins "active or substantial development" on the property within twelve months of the

approval. The parties do not dispute that the developer met this statutory condition, and thus agree that the city could not have blocked the developer's proposed construction under the 1988 ordinance until at least August 31, 1991.

In 1990, the developer ceased all construction on its property because of a statewide downturn in the real estate market. The developer did not seek to resume construction until April 2000, when it notified the city of its plans to finish the project. In response, the city studied the project and determined that the developer had completed 43.2 percent of the required public improvements, and 10.7 percent of all the total planned public and private improvements. Based on this study, and following a public hearing, the planning board found that the developer's right to complete construction had not vested, and that the changes in the zoning ordinance, no longer stayed by the four-year exemption, barred the developer's completion of the project. The planning board thus revoked the 1987 project approval.

Pursuant to RSA 677:15 (Supp. 2002), the developer appealed the planning board's decision to superior court, arguing that the right to complete the project had vested and could not be revoked. The superior court determined that the developer had actually completed 70 percent of the required public improvements. However, the court compared the $201,614 spent on these improvements to the projected cost of the entire development: $6,432,384.50. Without taking into account the developer's completion of six houses, the court concluded that the developer had completed only about 3 percent of its project, and agreed with the planning board that this percentage was insufficient to constitute the "substantial construction" necessary to vest the right to complete the project under the common law standard of *Piper v. Meredith*, 110 N.H. 291, 299 (1970).

On appeal, the developer argues that the trial court erred in requiring a "substantial construction" standard that measured his completed construction against the total cost of the plan. The developer argues that the completion of seventy percent of the public improvements was sufficient to vest his rights. The developer also argues, along with the *amicus curiae* Home Builders and Remodelers Association of New Hampshire, that its expenditure of over $200,000 and construction of six homes was *per se* sufficient to vest its rights regardless of the total cost of the public or private improvements.

"We will affirm the trial court's factual findings unless they are unsupported by the evidence, and will affirm the trial court's legal rulings unless they are erroneous as a matter of law." *Morgenstern v. Town of Rye*, 147 N.H. 558, 561 (2002) (citation omitted). Because the trial court erred by focusing exclusively on the percentage of the total project

completed by the developer, and because the developer's construction was legally sufficient to vest its rights, we reverse.

Our common law standard for vesting provides that:

> [A]n owner, who, relying in good faith on the absence of any regulation which would prohibit his proposed project, has made substantial construction on the property or has incurred substantial liabilities relating directly thereto, or both, acquires a vested right to complete his project in spite of the subsequent adoption of an ordinance prohibiting the same.

*Piper,* 110 N.H. at 299.

The trial court interpreted "substantial construction" to require the developer to complete a certain percentage of its overall project. This interpretation is at odds with our cases, conflicts with the rationale of the standard, and would lead to anomalous results.

First, our cases do not support the trial court's standard. Although we have described completed construction as a percentage of the total project, *see Henry and Murphy, Inc. v. Town of Allenstown,* 120 N.H. 910, 913 (1980) (noting that builder, who had developed 34 out of 50 lots, had completed "approximately seventy percent" of improvements on his plan); *Piper,* 110 N.H. at 299, we have never held that completion of a certain percentage of construction is the exclusive method by which the rights of a developer may vest. Indeed, we said in *Piper* that "each case presents a question of fact peculiar to its own set of circumstances." *Piper,* 110 N.H. at 300.

Second, the trial court's "substantial construction" standard conflicts with the common law rationale for vesting. Common law vesting rights stem from the developer's good faith reliance upon the absence of applicable zoning regulations. *Piper,* 110 N.H. at 299. For this reason, when developers act in good faith, courts tend to construe the vesting of rights liberally. *See, e.g., Town of Hillsborough v. Smith,* 170 S.E.2d 904, 909 (N.C. 1969) (developer need only "make a substantial beginning of construction and incur therein substantial expense" to vest); *Tantimonaco v. Zoning Board of Review,* 232 A.2d 385, 387 (R.I. 1967) (developer need only initiate construction in some reasonably substantial measure). The trial court's requirement that a developer complete a certain percentage of the project is a departure from this rationale, and instead resembles the "substantial completion" test used to determine whether a contract is performed. *See, e.g., Salem Engineering and Construction Corp. v. Londonderry School District,* 122 N.H. 379, 385 (1982). Because vested rights are not based upon a contract theory, it would be improper to

condition the vesting of rights solely on a standard derived from contract law.

█ Finally, the trial court's interpretation would lead to anomalous results, as it unfairly burdens developers with large or complex plans. In fact, the city's application of this standard has already led to disparate results. At about the same time it considered this case, the city determined that another developer, who had spent no more than $143,000 on his approved plan, had acquired a permanent, vested right to complete his project. The rationale for this decision was that the total cost of the other developer's project was only several hundred thousand dollars, and that the construction completed by the developer thus constituted a substantial percentage of the total. While consistent with the reasoning used by the city and trial court in this case, the trial court's standard places as much emphasis on the size of the overall project as it does on the actual reliance of the developer. We thus hold that the superior court erred as a matter of law in interpreting the "substantial construction" standard.

█ On the other hand, we reject the developer's argument that the common law standard of "substantial construction" only concerns public improvements to the land. The developer argues that "significant expenditures" on construction to make property developable are enough to vest building rights. This argument does not account for the requirement that construction must be "substantial." *Piper*, 110 N.H. at 299. While it is possible that a developer may vest his rights solely by his construction of public improvements, such vesting will occur because the completed construction was "substantial," and not merely because it constituted a certain percentage of the total public improvements.

█ The developer also argues that the four-year exemption statute, RSA 674:39, establishes an independent standard for "substantial construction." We have recently decided to the contrary, holding that the statutory vesting standard is coextensive with the common law standard. *See Morgenstern*, 147 N.H. at 563. The statute's purpose is not to establish an independent standard for vesting, but to provide a developer with additional time to meet the common law vesting standard. Under RSA 674:39, I, a developer who commences "active or substantial" construction within one year of his project's approval gains a four-year exemption from changes in a municipality's zoning ordinances. RSA 674:39, I. To gain a permanent vested right, however, the developer must still meet the "substantial construction" standard within this exemption period. *Id.* Because the developer triggered the statutory four-year exemption with its work on the project in 1987 and 1988, we need only determine whether

the developer's construction was sufficient to permanently vest its common law right to complete the plan.

■ The correct standard for "substantial construction" vesting considers not only construction measured against the entire plan, but also whether the amount of completed construction is *per se* substantial in amount, value or worth. Whether or not construction is substantial thus depends upon the facts and circumstances of each case. *Piper*, 110 N.H. at 300. In cases where construction expenditures amount to large sums, construction need not "be judged by comparison to the ultimate cost" of the project. *Piper*, 110 N.H. at 303 (Grimes, J., dissenting).

■ In this case, the developer's expenditure of over $200,000 on public improvements and construction of six houses dwarfs the sort of construction expenditures we have found to be insubstantial. *See, e.g., Riverview Park, Inc. & Gateway Equipment Co. v. Town of Hinsdale*, 113 N.H. 693, 695 (1973) (no vesting for "relatively small sums spent . . . for engineering services, clearing, and utility extension in contemplation of expansion"); *Piper*, 110 N.H. at 300 (no vesting when good faith expenditures are at most $28,000); *Winn v. Lamoy Realty Corp.*, 100 N.H. 280, 282 (1956) (no vesting when expenditure was less than $1,000). The trial court, in fact, found that the developer's expenditures on public improvements constituted "a relatively substantial amount of money when considered in isolation." When combined with the construction of the six houses, the developer's work was enough to meet the "substantial construction" standard.

We also note that no dispute exists that the developer met the good faith requirement of the vesting test. *See Piper*, 110 N.H. at 299. The developer carried out construction on the property under the authority of RSA 674:39, and ceased work only because of a lengthy economic downturn in the housing market. Thus, the developer was not "heedless of serious questions about the legality of [its] actions" at any point following the approval of the housing plan. *Hussey v. Town of Barrington*, 135 N.H. 227, 232 (1992).

Because the developer met all the conditions of the common law for substantial construction, we hold that its right to complete the entire housing plan approved on August 31, 1987, has permanently vested. *See Henry and Murphy*, 120 N.H. at 913-14. Having decided for the developer

on this basis, we need not consider the remaining issues raised in the appeal.

*Reversed and remanded.*

DALIANIS, J., concurred; BARRY and COFFEY, JJ., superior court justices, specially assigned under RSA 490:3, concurred.