Hillsborough-southern judicial district
No. 2002-011

R.J. MOREAU COMPANIES, INC.

v.

TOWN OF LITCHFIELD

Argued: November 13, 2002
Opinion Issued: December 24, 2002

*Andrew H. Sullivan*, of Bedford, and *Daphne Lessard*, of Bradford, on the brief, and *Mr. Sullivan* orally, for the plaintiff.

*Bossie, Kelly, Hodes, Buckley & Wilson, P.A.*, of Manchester (*Stephen C. Buckley* and *David E. LeFevre* on the brief, and *Mr. Buckley* orally), for the defendant.

*Maura Carroll*, of Concord (*Ms. Carroll* and *Linda Hoffman Dianis* on the brief), for the New Hampshire Municipal Association, as *amicus curiae*.

DUGGAN, J. The defendant, the Town of Litchfield (town), appeals a ruling of the Superior Court (*Hampsey*, J.) reversing the planning board's determination that the town could impose certain impact fees on lots owned by the plaintiff, R.J. Moreau Companies, Inc. (the developer). The court held that RSA 674:39 (1996) barred the imposition of these impact fees. We affirm.

The following facts were found by the trial court or are uncontested in the record. The developer owns lots in two subdivisions in the Town of Litchfield: the Sawmill Reserve and Brookview Place subdivisions. On October 5, 1999, the town's planning board approved plans for the Sawmill Reserve subdivision. This approval was recorded on October 13, 1999. On August 1, 2000, the planning board approved the plans for the Brookview Place subdivision. This approval was recorded on August 17, 2000.

The town imposes impact fees on new developments. The purpose of the fees is to provide funding to offset the increased demand on municipal facilities and schools caused by such development. Under the town ordinances, impact fee schedules can be reviewed and revised periodically by the town's planning board, subject to the approval of the town's board of selectmen. The town's original impact fee schedule was set at about $0.91 per square foot of living area. On March 14, 2000, the town amended its ordinances by authorizing the planning board to modify its method of calculating impact fees. Under this authority, the planning board met on August 22, 2000, and adopted a new impact fee schedule set at $3.801 per square foot of living area, more than four times the original fee. The town's board of selectmen approved the new schedule on August 28, 2000, effective immediately.

When the developer subsequently applied for building permits for its lots, the town required it to pay impact fees under the new schedule. The developer did so, but then appealed to the planning board, challenging the imposition of the higher fees. The developer argued, *inter alia*, that RSA 674:39 prevented application of the new impact fee schedule because the planning board had adopted it after the approval and recording of the developer's subdivision plans. The planning board rejected this argument and ruled that the developer was subject to the new fee schedule. The developer appealed to superior court, *see* RSA 677:15 (Supp. 2002), which reversed the planning board and held that the town was statutorily barred from imposing the new fee. The town appeals this ruling.

"We will affirm the trial court's factual findings unless they are unsupported by the evidence, and will affirm the trial court's legal rulings unless they are erroneous as a matter of law." *Morgenstern v. Town of Rye*, 147 N.H. 558, 561 (2002) (citations omitted).

RSA 674:39 provides, in relevant part:

> Every plat or site plan approved by the planning board and properly recorded in the registry of deeds shall be exempt from all subsequent changes in subdivision regulations, site plan review regulations, and zoning ordinances adopted by any city, town, or county ... except those regulations and ordinances which expressly protect public health standards, such as water quality and sewage treatment requirements, for a period of 4 years after the date of the recording ... provided that:

> I. Active and substantial development or building has begun on the site by the owner or the owner's successor in interest in accordance with the approved plat within 12 months after the date of approval ....

The statute allows developers to rely upon the status quo of a municipality's zoning ordinances, even before they complete substantial construction on their projects. *See AWL Power v. City of Rochester*, 148 N.H. 603 (2002). Thus, if a developer begins "active or substantial development or building" on its project within twelve months of approval, the developer obtains a four-year exemption from any zoning ordinances passed after its site plan's approval and recording, subject only to the exceptions provided in the statute. *See* RSA 674:39. The four-year exemption runs from the date the project's approval is recorded. *Id.*

■ In New Hampshire, a municipality's power to adopt "innovative land use controls" such as impact fees derives not from a general police or taxation power, but from its statutory power to enact zoning ordinances. *See* RSA 674:16, II (Supp. 2002); RSA 674:21 (Supp. 2002). Thus, the town's revision of its impact fee schedule constituted an amendment to its zoning ordinance.

The language of RSA 674:39 makes the revised schedule inapplicable to R.J. Moreau's approved site plans. The town, however, argues that RSA 674:39 should be limited to zoning ordinances that "have the effect of prohibiting completion of development of [a developer's] lots in accordance with their approved plans." It argues that impact fees do not prohibit a project's completion and instead are merely additional costs imposed on a developer.

■ "Where the language of a statute is clear on its face, its meaning is not subject to modification." *Marcotte v. Timberlane/Hampstead School Dist.*, 143 N.H. 331, 337 (1999). RSA 674:39 plainly encompasses all zoning ordinances, whether or not they will have the effect or purpose of stopping

a developer's approved project. If the legislature wanted to exempt impact fees, it could have included them in the statutory exceptions. *See* RSA 674:39 (excepting "those regulations and ordinances which expressly protect public health standards, such as water quality and sewage treatment requirements").

*Morgenstern v. Town of Rye*, relied upon by the town, does not compel a contrary result. In *Morgenstern*, we held that RSA 674:39 incorporates the common law standard that a builder must complete "substantial construction" before his right to complete a project becomes permanently vested against subsequent zoning changes, and does not establish an independent statutory vesting standard. *Morgenstern*, 147 N.H. at 563. The instant case, however, does not involve the vesting provision of RSA 674:39. Instead, it concerns the preliminary four-year exemption from new zoning ordinances provided in the same statute. Unlike common law vesting, the four-year exemption is temporary, purely statutory in origin, and depends upon a developer's recording of its site plan approval and "active and substantial development," rather than completion of substantial construction. *Compare* RSA 674:39 *with Piper v. Meredith*, 110 N.H. 291, 299 (1970). *Morgenstern*'s deference to a common-law standard is thus inapplicable to this case.

■ The town also argues that the developer had no reliance interest in the impact fee schedule because such fees cannot be assessed until a building permit is issued, after the approval of a site plan. It is clear from the record, however, that the town's impact fees are not a matter of unfettered discretion, but instead depend upon a fixed schedule based upon the living area in the developer's planned houses. Any developer would likely take the existing impact fee schedule into account when proposing its site plan. RSA 674:39 thus protects a developer's reliance upon the existing fee schedule at the time of recording the subdivision approval just as it protects reliance upon the absence of zoning ordinances that would prohibit a planned use of the property. *See Morgenstern*, 147 N.H. at 563.

Because the Sawmill Reserve subdivision was approved before both the passage of the March 14, 2000 amendment to the town's zoning ordinance and the planning board's August 22 adoption of the new ordinance, it is exempt from these changes under RSA 674:39. The town, however, argues that because the Brookview Place subdivision was approved after the March 14, 2000 amendment, though before the planning board's adoption of the new fee schedule, it is subject to the new impact fees. We disagree.

In essence, the town argues that because the impact fee schedule "remained subject to review and revision" by the planning board under the

March 14 amendment, the developer had no "legitimate investment-backed expectations" in the original fee schedule after its passage. A town, however, possesses the statutory authority to amend any of its zoning ordinances "[f]or the purpose of promoting the health, safety, or the general welfare of the community." RSA 674:16, I. Thus, *every* zoning ordinance remains subject to constant review and revision. The effect of the statutory four-year exemption, nevertheless, is to grant a developer a reliance interest in the status quo of a municipality's zoning ordinances as they exist at the time the approval is recorded. *See* RSA 674:39.

The March amendment did not substantively change the town's impact fee schedule. Rather, it delegated authority to change the schedule to its planning board. The amendment thus did not affect the developer's statutory reliance interest in the fee schedule existing when the Brookview Place site plan approval was recorded. *See* RSA 674:39. For this reason, we affirm the superior court's ruling.

*Affirmed.*

BROCK, C.J., and BRODERICK, NADEAU and DALIANIS, JJ., concurred.