Carroll
No. 2009-023

## The Hill-Grant Living Trust

v.

## Kearsarge Lighting Precinct

Argued: September 24, 2009
Opinion Issued: December 16, 2009

530

*Cooper Cargill Chant, P.A.*, of North Conway (*Randall F. Cooper* on the brief and orally), for the plaintiff.

*Boynton, Waldron, Doleac, Woodman & Scott, P.A.*, of Portsmouth (*William G. Scott* and *Leslie M. Leonard* on the brief, and *Mr. Scott* orally), for the defendant.

HICKS, J. The plaintiff, Hill-Grant Living Trust, appeals an order of the Superior Court (*Houran*, J.) granting summary judgment to the defendant, Kearsarge Lighting Precinct, and denying its cross-motion for summary judgment, on the ground that the plaintiff's regulatory taking claim is premature. We affirm.

The trial court's order recited the following facts. Kearsarge Lighting Precinct is a village district that has the authority to promulgate zoning regulations. It enacted a zoning ordinance that prohibits the building of any structure more than 900 feet above sea level. The plaintiff owns a thirty-acre parcel in Bartlett. The property lies within the district and almost all of it lies more than 900 feet above sea level.

The plaintiff sought a building permit to build a house at an elevation above the 900-foot limit. Following denial of the application by the precinct's commissioners, the plaintiff appealed to the precinct's zoning board of adjustment (ZBA) requesting a variance. The ZBA denied the request and the plaintiff did not appeal that decision.

Instead, the plaintiff commenced the instant action alleging inverse condemnation by regulatory taking. The plaintiff sought just compensation under the State Constitution and damages under 42 U.S.C. § 1983 (2006) on the ground that a failure to pay compensation would violate the Federal Constitution's Fifth Amendment.

In granting the precinct's motion for summary judgment, the trial court employed the federal finality doctrine espoused in *Williamson Planning Comm'n v. Hamilton Bank*, 473 U.S. 172 (1985), agreeing with the parties that this court, "when presented with the opportunity to do so, . . . [would] apply the *Williamson* finality doctrine to state regulatory takings claims." Applying the *Williamson* standard, the court concluded that "this litigation is premature."

On appeal, the plaintiff argues that the trial court erred in ruling that the denial of its variance application "was not a final, definitive position" of the ZBA. It also contends that the trial court erred in failing to grant its cross-motion for summary judgment because "the adoption and application of the [900-foot restriction] to the plaintiff's property was a categorical taking, depriving the Plaintiff of all economically beneficial use of those property rights by prohibiting any development on the subject property."

Before addressing the plaintiff's arguments, we first consider the precinct's contention that the plaintiff's taking claim is now moot because the precinct rescinded the zoning ordinance article at issue on March 26,

2009, and, therefore, the 900-foot restriction is no longer applicable to the plaintiff's property. The precinct asserts that the plaintiff "needs to submit a new application for consideration," failing which, its "claim for damages is rendered moot." In addition to briefing the mootness argument, the precinct filed a motion to dismiss, which we deferred ruling upon until after oral argument.

The plaintiff disputes that its claim is moot, arguing that rescission of the ordinance merely limits its claim to one for a temporary taking. It also asserts that "[a]t a minimum, [it] should be entitled to [its] fees and costs in bringing this appeal."

■ We agree with the plaintiff that rescission of a challenged ordinance will not moot an otherwise valid regulatory taking claim. As the United States Supreme Court stated in *First Lutheran Church v. Los Angeles County*, 482 U.S. 304, 319 (1987), "[i]nvalidation of the ordinance . . . though converting the taking into a 'temporary' one, is not a sufficient remedy to meet the demands of the Just Compensation Clause." Thus, "where the government's activities have already worked a taking of all use of property, no subsequent action by the government can relieve it of the duty to provide compensation for the period during which the taking was effective." *First Lutheran Church*, 482 U.S. at 321; *see Smith v. Town of Wolfeboro*, 136 N.H. 337, 345 (1992) (citing *First Lutheran Church* for support in a state constitutional takings analysis). Accordingly, we deny the precinct's motion to dismiss.

In reviewing the trial court's grant of summary judgment, "we consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party." *McGrath v. SNH Dev.*, 158 N.H. 540, 542 (2009). "We will affirm if the evidence reveals no genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law. We review the trial court's application of the law to the facts *de novo*." *Id.* (quotation and citation omitted). Where the plaintiff has raised both state and federal constitutional claims, we address the plaintiff's state constitutional claim first, *see State v. Ball*, 124 N.H. 226, 231 (1983), and cite federal opinions for guidance only, *see id.* at 232-33.

■ We recognize that "arbitrary or unreasonable restrictions which substantially deprive the owner of the economically viable use of his land in order to benefit the public in some way constitute a taking within the meaning of our New Hampshire Constitution requiring the payment of just compensation." *Burrows v. City of Keene*, 121 N.H. 590, 598 (1981) (quotation omitted). While "[t]he owner need not be deprived of all valuable use of his property," a taking occurs "[i]f the denial of use is substantial and is especially onerous." *Id.* "There can be no set test to determine when

regulation goes too far and becomes a taking. Each case must be determined under its own circumstances." *Id.*

As the United States Supreme Court reasoned in *MacDonald, Sommer & Frates v. Yolo County,* 477 U.S. 340, 348 (1986):

> It follows from the nature of a regulatory takings claim that an essential prerequisite to its assertion is a final and authoritative determination of the type and intensity of development legally permitted on the subject property. A court cannot determine whether a regulation has gone "too far" unless it knows how far the regulation goes.

Accordingly, the Court held in *Williamson,* 473 U.S. at 186, that "a claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue."

The trial court predicted that when presented with an appropriate case, we would adopt the reasoning of *Williamson* for purposes of a regulatory taking claim under our State Constitution. In *Blue Jay Realty Trust v. City of Franklin,* 132 N.H. 502, 505-06 (1989), we relied upon *Williamson* in affirming the dismissal of federal takings and due process claims. We left open, however, the question whether a *Williamson* requirement should be imposed upon a plaintiff raising a State taking claim, stating that "we will need a more developed record than this case now presents, as well as a reason to believe that the issue need be reached, before considering it." *Blue Jay Realty Trust,* 132 N.H. at 506. The case now before us squarely presents the issue on an adequate record, and we now hold that a State taking claim must meet the ripeness requirement of presenting "a final decision [of the applicable governmental entity] regarding the application of the regulations to the property at issue." *Williamson,* 473 U.S. at 186.

The plaintiff argues that its claim is ripe, citing *Palazzolo v. Rhode Island,* 533 U.S. 606 (2001), for the following proposition:

> While a landowner must give a land-use authority an opportunity to exercise its discretion, once it becomes clear that the agency lacks the discretion to permit any development, or the permissible uses of the property are known to a reasonable degree of certainty, a takings claim is likely to have ripened.

*Palazzolo,* 533 U.S. at 620. The plaintiff asserts two reasons why it would have been futile to submit another application for the ZBA's discretionary

review. First, it asserts that it submitted a plan that "clearly showed that the proposed building site was the lowest point on the property that would support both vehicular access and state septic." Second, it argues that the ZBA could not legally accept and consider a new variance application because "[t]here has been no change of circumstances affecting the merits of the application." *See Fisher v. City of Dover*, 120 N.H. 187, 190 (1980). We address each contention in turn.

The plaintiff's first contention is based upon a plan it submitted that contained the following notation:

THIS LOT IS REACHED BY A DEEDED RIGHT OF WAY. THIS ROW DOES NOT GIVE ACCESS TO THE LOWER (SOUTHEAST) PORTION OF THE LOT WHICH IS ALSO INACCESSIBLE DUE TO THE RAVINE SHOWN BY THE STEEP CONTOUR LINES[.]

THE PLAN SHOWS THE FIRST AVAILABLE HOUSE SITE ON THE 30 ACRE PARCEL THAT IS ACCESSIBLE BY THE DEEDED RIGHT OF WAY AND WILL MEET THE STANDARDS OF THE NEW HAMPSHIRE DEPARTMENT OF ENVIRONMENTAL SERVICES.

■ While we consider, on appeal from a grant of summary judgment, "all inferences properly drawn from [the evidence] . . . in the light most favorable to the non-moving party," *McGrath*, 158 N.H. at 542, the plaintiff attempts to read more into this plan than can be reasonably inferred from it. We cannot conclude from the description of the proposed site as the "FIRST" accessible site meeting septic requirements that it is the only such site; in fact, the use of the term "FIRST" implies that there are or may be others. Nor does the plan show that the proposed building site is "the *lowest* point on the property" (emphasis added) that would be both accessible and support a septic system. The plan's notation states only that a portion of the lot which is cut off by a ravine is also inaccessible from the right-of-way. The plan shows an area between the right-of-way and the ravine that is lower in elevation than the proposed homesite, and gives no indication that the area is not accessible from the right-of-way. Thus, we cannot draw a reasonable inference from the plan that there is no lower site on the property that would be accessible from the right-of-way and support a septic system; any such conclusion would be mere speculation.

■ We also note that the record contains the affidavit of one of the trustees of the plaintiff who avers that he is "familiar with the land, and the house site selected by the engineers was the . . . lowest site in elevation accessible from the right-of-way giving access to the property." We find this

affidavit insufficient to create a triable issue of fact on the question of the futility of submitting a new variance application because it does not meet the requirement of "set[ting] forth specific facts showing that there is a genuine issue for trial." RSA 491:8-a, IV (1997).

■ To defeat a motion for summary judgment, "[t]he opposing party's affidavit must contain more than general allegations or denials. It must set forth specific facts showing a genuine issue for trial." *Gamble v. University of New Hampshire*, 136 N.H. 9, 16-17 (1992). The affiant's assertion of inaccessibility is merely a conclusory allegation; under the circumstances of this case, it is tantamount to assertion of the opinion, unsupported by any factual basis, such as, for instance, steepness of grade or physical obstruction, that it is physically impossible to construct a road or driveway to a lower site on the property between the right-of-way and the ravine. As such, the affidavit is insufficient to defeat summary judgment. *Cf. N.E. Tel. & Tel. Co. v. City of Franklin*, 141 N.H. 449, 454 (1996) (affidavit, even of expert, that failed to set forth specific facts was insufficient to support conclusory assertions and conclusory assertions did not satisfy burden in opposing a summary judgment motion).

■ The plaintiff next argues that *Fisher* precludes the ZBA from considering a new variance application. In *Fisher*, we stated that "[w]hen a material change of circumstances affecting the merits of the application has not occurred or the application is not for a use that materially differs in nature and degree from its predecessor, the board of adjustment may not lawfully reach the merits of the petition." *Fisher*, 120 N.H. at 190. We further stated that "[t]he determination of whether changed circumstances exist is a question of fact which necessitates a consideration of the circumstances which existed at the time of the prior denial. Resolution of this issue must be made, in the first instance, by the board of adjustment." *Id.* at 190-91 (quotation and citation omitted).

The precinct argues that it has presented evidence showing that the ZBA "was willing to consider other, less ambitious plans for the [plaintiff's] property" and that a new proposal "with a materially different building structure and location" would likely meet the *Fisher* standard for consideration of a subsequent application. Specifically, the minutes of the January 15, 2008 ZBA meeting record the following:

> [ZBA member Rob] Clark stated the plan submitted with the applicant's application shows they want to construct at the 1200-foot [*sic*] mark. [Kearsarge Lighting Precinct Commissioner Peter] Needham stated the Board should consider allowing the applicant to construct at a lower elevation.

. . . Thomas McDonough, Kearsarge Lighting Precinct Commissioner, asked if the Board could grant an elevation limitation of where they can build on that lot. [Precinct Counsel Peter] Hastings answered in the negative and stated that the applicant is challenging the 900-foot elevation period. Mr. McDonough stated he wouldn't want to see the variance granted, but if the applicant came back with a specific location, he could see granting a variance on that specific location.

. . . .

. . . [ZBA member John] McDougall stated currently the applicant is asking to build anywhere on the lot, but if the applicant resubmits with a certain elevation, the Board may grant a Variance.

This case is therefore factually more analogous to *Morgenstern v. Town of Rye*, 147 N.H. 558 (2002), in which we noted that the minutes of prior ZBA hearings "d[id] not suggest that the ZBA would never grant a variance to construct a house on the plaintiff's lot. Indeed, in its pleadings submitted to the superior court, the town essentially invited the plaintiff to file a new variance application . . . ." *Morgenstern*, 147 N.H. at 566. We distinguished the situation presented in *Morgenstern* from that in *Fisher* on the ground that "the plaintiff did not merely resubmit substantially the same application for a variance, but, at the town's invitation, submitted a new proposal in an effort to meet the town's concerns," *id.*, and concluded that the trial court erred in ruling that there was no material change between the previous and subsequent applications, *id.* at 564.

██ On the basis of *Morgenstern*, we conclude that *Fisher* does not preclude consideration of a subsequent variance application explicitly or implicitly invited by the ZBA and modified to address its concerns. *See id.* at 564, 566. The determination of whether a subsequent application is "for a use that materially differs in nature and degree from its predecessor," *Fisher*, 120 N.H. at 190, like the determination of whether changed circumstances exist, "must be made, in the first instance, by the board of adjustment." *Fisher*, 120 N.H. at 191. Thus, it is logical to presume that if the ZBA invites submission of a subsequent application modified to meet its concerns, it would find an application so modified to be materially different from its predecessor, thus satisfying *Fisher*.

The plaintiff argues that this case differs from *Morgenstern* because here "there was no real discussion" regarding the ZBA's concerns. The plaintiff contends that "[i]t would be one thing if there had been specific complaints about the proposal vis-a-vis its specific location and its impact on abutters, or the view, or the drainage or whatever," but asserts that "in this case,

there was nothing at issue other than the fact that the application was contrary to a prohibition to construct above 900 feet."

We disagree. As the ZBA minutes quoted above indicate, the ZBA's concern was not that the proposed building site was above 900 feet in elevation, but that it was at or nearly at the highest elevation on the property. The minutes indicate that the ZBA would consider a different site at a lower elevation than the first proposal, yet still above 900 feet.

The plaintiff, nevertheless, argues that even if a new variance application were considered, its approval would be precluded by the application of collateral estoppel to the ZBA's prior findings. Specifically, the plaintiff asserts:

> The ZBA voted unanimously that the construction of the home on the property above 900 feet would cause a diminution of property value to the abutting property. The ZBA also voted unanimously that construction of a home above 900 feet would [be] contrary to the spirit and intent of the ordinance, would be contrary to the public interest, and that substantial justice would not be done by the granting of the variance.

(Citations omitted.) *See, e.g.*, *Malachy Glen Assocs. v. Town of Chichester*, 155 N.H. 102, 105 (2007) (outlining requirements an applicant for a variance must satisfy); *cf.* Laws 2009, 307:6 (repealing and reenacting RSA 674:33, I(b) relating to conditions under which a zoning board of adjustment is empowered to grant a variance).

We disagree with the plaintiff's characterization of the ZBA's findings. Each of the findings referred to related to the consequences of granting "this variance," not of generally building above the 900-foot elevation. *Cf. Malachy Glen Assocs.*, 155 N.H. at 107 (noting that "the mere fact that the project [violates a provision of the zoning ordinance], which is the reason for the variance request, cannot be used by the ZBA to deny the variance"). For instance, the ZBA unanimously denied the proposed finding "that the use contemplated by the petitioner as a result of obtaining *this variance* would not be contrary to the spirit and intent of the ordinance." (Bolding omitted; emphasis added.) The other proposed findings similarly referred specifically to "this variance."

■ Moreover, after the denial of a building permit, the plaintiff filed an appeal from administrative decision along with the request for variance with the ZBA, attaching the building permit application and its attachments. Those attachments include a plot plan showing the proposed house location at an elevation roughly between 1028 and 1036 feet. We conclude that in context, "this variance" refers to a variance to permit construction

of the specific building proposed in the specific location proposed. *Cf. L&G Associates v. Bd. of Appeals*, 673 A.2d 1146, 1148 (Conn. App. Ct. 1996) ("A use outside that requested in the variance application and illustrated in the site plan would require a further variance. . . . To hold otherwise would transform a variance into a change of zone."). Thus, consideration of a variance application to build at a different location on the property would not be precluded by collateral estoppel.

For the foregoing reasons, we conclude that the submission of a new variance application would not have been futile. We do not intend to imply, however, that the ZBA may oppressively require a landowner to submit multiple successive applications. As the Supreme Court noted in *Palazzolo*: "Government authorities, of course, may not burden property by imposition of repetitive or unfair land-use procedures in order to avoid a final decision." *Palazzolo*, 533 U.S. at 621.

Because the ZBA "has [not] reached a final decision regarding the application of the regulations to the property at issue," *Williamson*, 473 U.S. at 186, the plaintiff's state taking claim is not ripe and we affirm the decision of the trial court. As *Williamson* also bars the plaintiff's federal claims, we reach the same result under the Federal Constitution as we do under the State Constitution.

The plaintiff also challenges the trial court's denial of its cross-motion for summary judgment, in which it argued, on the basis of *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528 (2005), and *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003 (1992), that imposition of the 900-foot restriction upon its property constitutes a categorical taking, "depriving the Plaintiff of all economically beneficial use of th[e] property . . . by prohibiting any development [thereon]." We need not reach this argument because we hold that the plaintiff's *per se* taking claim is not ripe.

*Affirmed.*

BRODERICK, C.J., and DALIANIS, DUGGAN and CONBOY, JJ., concurred.