**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2022-0707, <u>PPI Enterprises, LLC v. Town of Windham</u>, the court on February 2, 2024, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, has considered the oral arguments of the parties, and has determined to resolve the case by way of this order. <u>See</u> <u>Sup. Ct. R.</u> 20(2). The plaintiff, PPI Enterprises, LLC (PPI), appeals orders of the Superior Court (<u>Attorri</u>, J.) affirming a decision of the planning board (Board) for the defendant, the Town of Windham (Town), denying PPI's site plan application. PPI also appeals the trial court's determination that PPI's inverse condemnation claim is not ripe. We affirm.

I

This appeal arises out of ongoing litigation between PPI and the Town regarding PPI's site plan application to construct a self-storage facility at 14 Ledge Road. Many of the underlying facts and related procedural history are set forth in our prior order and will not be repeated here. <u>See</u> <u>PPI Enterprises, LLC v. Town of Windham</u>, Nos. 2020-0249 and 2020-0250 (non-precedential order at 1-3), 2021 WL 2580598 (N.H. June 23, 2021). As pertinent to this appeal, the facts set forth below were found by the trial court or are supported by the record.

In September 2018, PPI filed a site plan application which included an access road with an eight-percent grade. Throughout numerous public hearings on the application, the Board's primary concern centered around the amount of proposed blasting called for by the application. PPI agreed to comply with all applicable blasting regulations, including the Town's ordinance, and, in an effort to further address the Board's concerns, amended its application to increase the grade of the access road to ten percent in order to reduce the amount of blasting. In June 2019, the Board denied the application as amended. The Board based its decision on section 100 of the Windham Zoning Ordinance, which sets forth its general purposes. <u>See id</u>. at *1.

After PPI filed a series of appeals — including to the Town's zoning board of adjustment, superior court, and this court — we remanded the case for the Board to "resume its deliberations and issue a final decision on PPI's site plan

application." Id. at *4. In August 2021, the Board again denied the application, due, in part, to safety concerns regarding the ten-percent grade. The Board's grounds also included threats to public health and safety and the possible impact of contamination of surface and groundwater from blasting.

PPI appealed the Board's denial to the superior court, asserting that the grounds stated by the Board did not provide a reasonable basis for its decision. In addition, PPI argued that the Board's consecutive denials of its application had rendered the property "essentially undevelopable, therefore resulting in an 'inverse condemnation' without just compensation."

In July 2022, following a hearing, the trial court upheld the Board's decision, finding that "the Board's safety concerns arising from the grade of the proposed access road were sufficient" to support denial of the application. However, the court directed the parties to submit further briefing with respect to PPI's inverse condemnation claim, expressing its concern that the Board "seemed intent on preventing PPI from developing the Property at all, inasmuch as such development would necessarily involve blasting." In support, the trial court observed that the Town: (1) considers the property "geographically challenged"; (2) effectively concedes that blasting is required to develop the property; (3) is "very concerned about blasting" on the property because of issues that arose from the previous owner's blasting; and (4) believes that the blasting ordinance "assumes a blank slate" and that "mere compliance with the ordinance would not be enough to gain approval" from the Board given the prior history of the property. (Quotations omitted.) The court also observed that the Board had twice denied PPI's application because of concerns about blasting "regardless of whether PPI's application complies with the Town's blasting ordinance." Thus, it "[struck] the Court as a foregone conclusion" that the Board would "certainly deny" a revised application with an eight-percent grade "since it would necessarily entail a greater amount of blasting than the application which ha[d] now been twice denied." (Quotations omitted.) Therefore, the trial court concluded, there was "a serious question" whether the Board's actions had "substantially interfered with, or deprived PPI of, the use of" its property.

In October 2022, after reviewing the parties' supplemental filings, the trial court determined that PPI's inverse condemnation claim was not ripe for review. The court found that there were "at least two possible paths" to developing the property — first, by exploring the possibility of obtaining access to the site "via an easement over an abutting commercial lot," or, second, by submitting a site plan application "which returns to the 8% driveway grade required by the Chief of Police and the Board," and which the Town had "affirmatively asserted that the Board will fairly consider." Given those options, the trial court could not conclude that PPI would "suffer undue hardship if the Court [did] not address its takings claim at this juncture" or that "the Board's denial of the [site plan application] constitute[d] a final and authoritative

determination of the type and intensity of development legally permitted" on the site. This appeal followed.

II

On appeal, PPI argues that the trial court erred by affirming the Board's decision to deny the site plan application and in determining that PPI's inverse condemnation claim is not ripe. Our review of a trial court's decision on an appeal arising from a decision of a planning board is limited. See Girard v. Town of Plymouth, 172 N.H. 576, 581 (2019). We will reverse the trial court's decision only if it is not supported by the evidence or is legally erroneous. Id. We review the trial court's decision to determine whether a reasonable person could have reached the same decision as the trial court based on the evidence before it. Id. at 582.

PPI first asserts that the trial court erred in upholding the Board's denial on the ground that the ten-percent grade violated the standard in the road grade regulation. PPI argues that "nothing in the road grade regulation itself" supports its applicability to a site driveway and, therefore, that ground for denial of PPI's application was "unlawful and unreasonable." However, regardless of whether the so-called road regulations applied, the court found that "the Board's safety concerns arising from the grade of the proposed access road were sufficient in themselves to support denial of the application." The trial court's finding is supported by the record.

At a hearing in May 2019, the Board considered PPI's amended site plan application to increase the grade of the driveway to ten percent. The meeting minutes reflect that the Board expressed disfavor with the increased grade, "considering that many people who would be using it would be inexperienced in driving box trucks." According to the minutes, at the hearing in August 2021 following remand from this court, the Chair "said that the grade of the road was questionable as it was presented as 10%," that "the police department disagreed that the grade was not a safety issue," and "questioned the health and safety of the sight lines from the proposed driveway." Accordingly, we agree with the Town that "[g]iven the nature of the expected traffic at a self-storage facility, and the projected capabilities of drivers, it was entirely reasonable for the Planning Board not to approve a 10% slope." See Star Vector Corp. v. Town of Windham, 146 N.H. 490, 493 (2001) (explaining that if any of the reasons offered by the Board to reject a site plan application supports its decision, then an appeal from the Board's denial must fail).

PPI next argues that the trial court erred in refusing to consider the merits of its inverse condemnation claim, asserting that the court's "conclusion that PPI's inverse condemnation claim was not ripe was unlawful and lacked any record support." According to PPI, the trial court's reliance on town counsel's assertion that the Board would consider a revised application in good

faith "had no record support being contrary to the actual conduct of the Planning Board in the case," and the court's finding that "there were at least two alternatives that could be pursued by PPI was likewise unlawful and unsupported by the record." Further, PPI asserts, it would be "futile" to submit an application with an eight-percent grade because, even if it could obtain alternative access to the site, some amount of blasting would be required to complete the project, and the Board has "repeatedly adopted the position that the Property is not suitable for development due to the need for blasting."

"[A]rbitrary or unreasonable restrictions which substantially deprive the owner of the economically viable use of his land in order to benefit the public in some way constitute a taking . . . requiring the payment of just compensation." Hill-Grant Living Trust v. Kearsarge Lighting Precinct, 159 N.H. 529, 532 (2009) (quotation omitted). "While the owner need not be deprived of all valuable use of his property, a taking occurs if the denial of use is substantial and is especially onerous." Id. (quotations and brackets omitted). "There can be no set test to determine when regulation goes too far and becomes a taking. Each case must be determined under its own circumstances." Id. at 532-33 (quotation omitted).

"It follows from the nature of a regulatory takings claim that an essential prerequisite to its assertion is a final and authoritative determination of the type and intensity of development legally permitted on the subject property." Id. at 533 (quotation omitted). "A court cannot determine whether a regulation has gone 'too far' unless it knows how far the regulation goes." Id. (quotation omitted). Thus, "a State taking claim must meet the ripeness requirement of presenting a final decision of the applicable governmental entity regarding the application of the regulations to the property at issue." Id. (quotation and brackets omitted).

Ripeness relates to the degree to which the defined issues in a case are based on actual facts and are capable of being adjudicated on an adequately developed record. Univ. Sys. of N.H. Bd. of Trs. v. Dorfsman, 168 N.H. 450, 455 (2015). Although we have not adopted a formal test for ripeness, we have found persuasive a two-pronged analysis that evaluates the fitness of the issue for judicial determination and the hardship to the parties if the court declines to consider the issue. Id. With respect to the first prong of the analysis, fitness for judicial review, a claim is fit for decision when: (1) the issues raised are primarily legal; (2) they do not require further factual development; and (3) the challenged action is final. Id. The second prong of the ripeness analysis requires that the contested action impose an impact on the parties sufficiently direct and immediate as to render the issue appropriate for judicial review at this stage. Id.

Here, the trial court recognized that whether PPI's condemnation claim was ripe for review presented "a close call" and that "[g]iven the lengthy

4

proceedings before the Board and PPI's good faith efforts to alleviate the Board's concerns, PPI's skepticism as to whether the Board would approve an alternate proposal for developing the Property [was] understandable." Nonetheless, in determining that the Board's denial of the application did not constitute a "final and authoritative determination of the type and intensity of development legally permitted," the court relied on the fact that since it issued its July 2022 order the Town had "repeatedly asserted that the Board would not necessarily deny subsequent applications to develop the Property." For example, the court noted that the Town has represented that PPI "could re-submit a new application that conforms with the 8% grade deemed acceptable by the Police Chief, and with other mitigation or modification, it could be found acceptable." (Brackets omitted.)

Should PPI choose to resubmit a site plan application that proposes an eight-percent grade, the Board shall, as represented by the Town and relied on by the trial court, "fairly consider the merits of such an application." See Hill-Grant Living Trust, 158 N.H. at 538 ("Government authorities . . . may not burden property by imposition of repetitive or unfair land-use procedures in order to avoid a final decision." (quotation omitted)). Accordingly, we agree with the trial court that, given the Town's affirmative representations, the Board's denial of PPI's amended site plan application proposing a ten-percent grade does not, as a matter of law, present a final decision regarding the application of the regulations to the property at issue and, therefore, we affirm the court's decision that PPI's taking claim is not ripe.

Affirmed.

MACDONALD, C.J., and BASSETT J., concurred; HANTZ MARCONI, J., concurred specially.

**Timothy A. Gudas,**
**Clerk**

HANTZ MARCONI, J., concurring specially. I concur in the result reached by my colleagues. I write separately to point out that this applicant has become wedged between the proverbial "rock and hard place." First, the applicant was denied for concerns over the amount of on-site blasting and then, after increasing the road grade to reduce the blasting, the applicant was denied for the excessively steep road grade. The town has represented that a resubmitted application that "conforms with the 8% grade . . . and with other mitigation or modification, could be found acceptable." I trust the Board will articulate the "other [reasonable] mitigation or modification" that will render the application acceptable. Carbonneau v Town of Rye, 120 N.H. 96, 99 (1980).