# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2016-0054, <u>Kulick's, Inc. v. Town of Winchester</u>, the court on September 16, 2016, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). We affirm.

The petitioner, Kulick's, Inc. (abutter), appeals an order of the Superior Court (<u>Kissinger</u>, J.) upholding a decision by the planning board (board) of the respondent, the Town of Winchester (town), to approve a site plan submitted by the intervenor, S.S. Baker's Realty Co., LLC (applicant). The abutter contends that the trial court erred because: (1) the site plan did not constitute a material change from a prior site plan, which the board had rejected; (2) the board imposed an illegal condition subsequent; (3) the applicant's special exception had expired; (4) the board improperly granted the applicant two waivers from the town's site plan regulations; and (5) the applicant's storm water management plan violated the town's storm water management regulations.

Superior court review of planning board decisions is limited. <u>CBDA Dev., LLC v. Town of Thornton</u>, 168 N.H. ___, ___, 137 A.3d 1107, 1111 (2016). The appealing party bears the burden of persuading the trial court that, by the balance of probabilities, the board's decision was unreasonable. <u>Id.</u> On appeal, the board's factual findings are deemed <u>prima</u> <u>facie</u> lawful and reasonable. <u>Id.</u> at ___, 137 A.3d at 1113; RSA 677:6 (2008). The superior court's review is not to determine whether it agrees with the planning board's findings, but to determine whether there is evidence upon which they could have been reasonably based. <u>CBDA</u>, 168 N.H. at ___, 137 A.3d at 1111. Our review of the superior court's decision is equally deferential. <u>Id.</u> We will uphold the decision on appeal unless it is unsupported by the evidence or legally erroneous. <u>Id.</u>

We first address whether the board had jurisdiction to review the second site plan. A board may review a successive site plan if it represents a material change from a previously rejected plan. <u>Id.</u> at ___, 137 A.3d at 1113. Whether a subsequent plan materially differs from its predecessor is a question of fact, to be determined, in the first instance, by the board. <u>Id.</u> A board may consider a subsequent plan that has been modified to address the board's concerns about the prior plan. <u>Id.</u> at ___, 137 A.3d at 1114.

In this case, the board denied the first site plan because it concluded that:

the project overwhelms the site and it does not adhere to best design standards. Additional reasons of denial are three safety issues: 1) the left hand turn onto Rt. 10 south crosses the northbound lane, 2) parking on the shoulder of Rt. 10 northbound, and 3) the overflow of traffic from the drive thru window onto Rt. 78.

The second site plan included: (1) prohibiting left turns onto Route 10; (2) removing one parking space, thereby increasing the open space on the site; and (3) reducing the size of the building to increase the width of the travel lanes.

Although the board did not explicitly find that these modifications constituted a material change, such a finding is implicit in its decision to consider the second site plan. Cf. Nordic Inn Condo. Owners' Assoc. v. Ventullo, 151 N.H. 571, 586 (2004) (stating trial court is assumed to have made all findings necessary to support its decision). The trial court found that the second site plan "specifically addressed" the board's concerns regarding the first site plan. We cannot conclude that this finding was unsupported by the evidence. See id. at ___, 137 A.3d at 1111.

The abutter contends that the changes in the second site plan were "not significant" and were not "physical changes." However, it does not cite, nor are we aware of, any authority requiring that changes be "significant" or "physical." The abutter argues, relying upon a Connecticut case, that "[t]here is no material change in a plan when the changes 'could have been required by the board at the first hearing as conditions precedent'" (quoting Consiglio v. Bd. of Zoning Appeals of City of New Haven, 217 A.2d 64, 66 (Conn. 1966)). However, this does not reflect New Hampshire law. See CBDA, 168 N.H. at ___, 137 A.3d at 1114 (stating board may consider subsequent plan that has been modified to address its concerns).

The abutter argues that "judicial grant of carte blanche authority to land use boards to characterize any change as 'material' will invariably produce political results" and will "open[ ] the floodgates to an endless series of re-submitted applications." However, this concern is unwarranted when a site plan has been modified to address the board's specific concerns about the initial plan. See id.

We next address whether the trial court erred in upholding the board's requirement that the applicant "hire a qualified engineer to oversee the construction site work . . . and report to the town," which the abutter contends was an "illegal" condition. Planning boards have the authority to condition site plan approval. Sklar Realty v. Town of Merrimack, 125 N.H. 321, 327 (1984). RSA 676:4-b (Supp. 2015) permits a planning board to obtain third-party review

of a site plan and to require the applicant to pay for it, but it does not require a planning board to do so.

In this case, the abutter argues that requiring the applicant to hire an engineer to oversee the site work was unreasonable because it "creat[ed] significant conflicts of interest contrary to public policy." However, the board's minutes state that it discussed "at length" whether to hire its own engineer, at the applicant's expense, or to require the applicant to hire an engineer. They also describe one member's reasoning that "a licensed professional would not jeopardize his license, and also the responsibility would be on the town if something went wrong." We note that section IX of the town's storm water management regulations requires only that the applicant report to the board regarding the site work. Accordingly, we cannot conclude that the trial court's decision – that the abutter failed to show that this condition was unlawful or unreasonable – was unsupported by the evidence or legally erroneous. See CBDA, 168 N.H. at ___, 137 A.3d at 1111.

We next address whether the trial court erred in upholding the board's finding that the applicant's special exception had not expired. The special exception, which was granted on February 22, 2012, allowed the applicant a "drive-thru window." The town's zoning ordinance provides that a special exception is valid for one year and may be renewed. The applicant filed its first site plan in March 2012, which the board denied and the applicant appealed; pursuant to statute, the trial court issued a writ of certiorari. See RSA 677:15 (Supp. 2015). RSA 677:15, II provides that the issuance of such a writ "shall stay proceedings upon the decision appealed from." That appeal was not resolved until our order of March 19, 2014. On June 24, 2013, while that appeal was pending, but more than one year after the special exception was granted, the applicant filed its second site plan.

Effective September 22, 2013, RSA 674:33, IV (Supp. 2015) was amended to provide that a special exception is valid for two years "or as further extended by local ordinance or by the zoning board of adjustment for good cause, provided that no such special exception shall expire within 6 months after the resolution of a planning application filed in reliance upon the special exception." Although the parties do not contend that this amendment governs, it is strong evidence of the legislature's intent that a special exception not expire while an application relying upon the exception is pending. Cf. Cecere v. Loon Mt. Recreation Corp., 155 N.H. 289, 293 (2007) ("Where an 'amendment [is] enacted soon after controversies [arise] as to the interpretation of the original act, it is logical to regard the amendment as a legislative interpretation of the original act.'").

The trial court correctly observed that, pursuant to RSA 677:15, II, its certiorari order stayed the planning board proceedings, thereby preventing the applicant from exercising its special exception. The trial court reasoned that the town's ordinance "presupposes that the applicant is actually able to engage in the

special exception use" during the one-year period.  Accordingly, the trial court found that the special exception's one-year deadline was also stayed by the appeal.  We find the trial court's reasoning persuasive.

The abutter argues that, because the applicant did not appeal the special exception decision, RSA 677:15, II is inapplicable.  However, we conclude that the special exception was an integral part of the site plan application.  Moreover, we note that, having prevailed upon its application for the special exception, the applicant would have had nothing to appeal in that decision.

The abutter argues, relying upon Connecticut law, that a special exception should be stayed when an abutter appeals approval of a site plan, but not when an applicant appeals its denial.  The abutter contends that "[t]he applicant should not be allowed to use the . . . appeal process as a way to buy additional time" and that the applicant could have filed its second site plan before the one-year expiration of the special exception.  However, RSA 677:15, II does not distinguish between appeals by abutters and applicants.  Cf. Asmussen v. Comm'r, N.H. Dep't of Safety, 145 N.H. 578, 584-85 (2000) (noting that, regardless of which party files it, a timely-filed post-trial motion will stay the appeal period under Supreme Court Rule 7).  Accordingly, we cannot conclude that the trial court erred by finding that the special exception had not expired when the applicant filed its second site plan.

Next, we address whether the trial court erred in affirming the two waivers granted by the board.  The board waived the site plan requirements that:  (1) "a landscape bed . . . separate parking from the front of the building"; and (2) this site's north boundary have a ten-foot wide landscape buffer, approving instead a five-foot wide landscape buffer with a six-foot high solid fence.  The town's site plan regulations, in conformity with RSA 674:44, III(e) (Supp. 2015), allow waiver of any of its provisions "where, in the opinion of the board, strict conformity would pose an unnecessary hardship to the applicant, and such waiver would not be contrary to the spirit and intent of the regulations."

The abutter argues that:  (1) the trial court should have applied the definition of "unnecessary hardship" set forth in RSA 674:33, I(b)(5) (Supp. 2015), which governs variances; and (2) the evidence did not support findings that strict conformity with the site plan regulations would result in unnecessary hardship or that the waivers were not contrary to the spirit and intent of the regulations.  To the extent that the abutter also argues that the board was required to make factual findings regarding hardship and consistency with the spirit and intent of the regulations, RSA 674:44, III(e) requires only that the board's underlying rationale for granting a waiver be adequately reflected in its minutes.  Prop. Portfolio Group. v. Town of Derry, 163 N.H. 754, 759 (2012).

The record does not reflect that the abutter clearly argued that the trial court should apply the definition of unnecessary hardship in RSA 674:33, I(b)(5)

4

until it made such an argument in its motion to reconsider. See Mortgage Specialists v. Davey, 153 N.H. 764, 786 (2006) (stating we will uphold trial court's decision not to entertain an issue raised for the first time in a motion to reconsider, absent an unsustainable exercise of discretion). Furthermore, the definition in RSA 674:33, I(b)(5) is explicitly limited to the purposes of that sub-paragraph. RSA 674:33, I(b)(5)(A). Accordingly, we cannot conclude that the trial court unsustainably exercised its discretion by not addressing this issue.

Although the record does not indicate that the board made express findings on the unnecessary hardship issue, we agree with the trial court's finding that "the underlying rationale of the [board's] decision is adequately reflected in its minutes." See Prop. Portfolio, 163 N.H. at 759.

We conclude that the evidence supported the board's determination that requiring a landscape bed separating the parking area from the building would cause unnecessary hardship and that waiving this requirement was not contrary to the spirit and intent of the regulations. The applicant proposed placing a sidewalk in front of the building and represented that "the width of the site prevents the installation of both a sidewalk and a landscape bed along the building front." The abutter argues that there was no evidence that the applicant could not comply with the requirement by reducing the size of its building. However, the trial court could have reasonably concluded that the board determined that such a reduction would be an unnecessary hardship. The site plan shows a landscape bed between the parking area and the road, and the town represents that it was "in the process of building sidewalks in the area." The trial court found that the sidewalk "further[ed] the safety of residents," which it reasonably found was consistent with the spirit and intent of the regulations.

Similarly, we conclude that the evidence supported the board's determination that requiring a ten-foot buffer on one site boundary would cause unnecessary hardship and that permitting a five-foot buffer and a six-foot solid fence instead was not contrary to the spirit and intent of the regulations. The applicant represented that the waiver would "allow better circulation around the fuel pumps area and safer access into and out of the site." We note that the applicant also agreed to place diesel pumps in only one location. Again, the trial court could have reasonably concluded that the board determined that either reducing the size of the project or tolerating worse circulation was an unnecessary hardship. We note that the abutter who shared the boundary did not object to the alternate buffer. The trial court could have reasonably found that the board determined that better circulation on the site and safer access and egress was consistent with the spirit and intent of the regulations.

Accordingly, we cannot conclude that the trial court's decision was unsupported by the evidence or legally erroneous. See CBDA, 168 N.H. at ___, 137 A.3d at 1111.

5

Finally, we address whether the applicant's storm water management plan violated the town's regulations. The interpretation of a zoning ordinance is a question of law, which we review de novo. Anderson v. Motorsports Holdings, 155 N.H. 491, 494–95 (2007). We are the final arbiter of the interpretation of a zoning ordinance's terms, and the traditional rules of statutory construction generally govern our review. Id.

The regulations' stated purpose is to "control the adverse [e]ffects of stormwater runoff" during and after "construction or land disturbance." The applicant's engineer stated that the applicant's storm water management plan would reduce "[r]unoff leaving the site . . . to below pre construction levels." We note that, in accordance with the regulations, the town's conservation commission reviewed the plan and concluded that it met "requirements." Section III(B) of the regulations, titled "Applicability," provides that "site disturbance involving the removal of vegetation or grading of land that is greater than 20,000 square feet . . . of cumulative site activity shall require the use of Best Management Practices" and refers to section X of the regulations, entitled "Best Management Practices." Section X(3) identifies as a best management practice: "Phasing of larger projects should be considered in an effort to keep areas of site disturbance to a minimum." Section IV defines "Disturbed Area" as "[a]n area where the natural vegetation has been destroyed or removed leaving the land subject to accelerated erosion."

The applicant represented to the trial court that its storm water management plan divided the project into three phases, each resulting in less than 20,000 square feet of disturbed area. The town represented that each of the three phases would be completed and the land stabilized before the next phase was begun. The town contended that, once stabilized, an area was no longer "disturbed" because it was then not "subject to accelerated erosion."

The abutter, however, points to section V(3) of the regulations, which provides:

> The area of disturbance shall be limited to 20,000 square feet of continuous area unless it is associated with the installation of a road. Larger areas of disturbance shall be separated by at least 20 feet of area maintained at natural grade and retaining existing, mature vegetative cover that is at least 20 feet wide at its narrowest point.

The abutter argues that this regulation prohibits any development larger than 20,000 square feet; at the same time, he argues that this regulation requires any development larger than 20,000 square feet to be surrounded by an undisturbed 20-foot wide buffer. However, we construe all parts of the regulation together to effectuate its overall purpose and avoid an absurd or unjust result. See Nashua Coliseum, LLC v. City of Nashua, 167 N.H. 726, 728 (2015) (addressing statutory

interpretation).  Accordingly, upon consideration of all the regulations, we conclude that, under the circumstances, the applicant's storm water management plan was authorized by the regulations.

Affirmed.


Dalianis, C.J., and Hicks, Conboy, Lynn, and Bassett, JJ., concurred.


**Eileen Fox,
Clerk**

7