NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Grafton
No. 2018-0495


DENIS GIRARD & a.

v.

TOWN OF PLYMOUTH

Argued: May 16, 2019
Opinion Issued: August 30, 2019


Cleveland, Waters and Bass, P.A., of Concord (William B. Pribis on the brief and orally), for the plaintiffs.


Donahue, Tucker & Ciandella, PLLC, of Exeter (John J. Ratigan and Brendan Avery O'Donnell on the memorandum of law, and Mr. O'Donnell orally), for the defendant.


DONOVAN, J. The plaintiffs, Denis Girard and Florence Leduc, appeal an order of the Superior Court (MacLeod, J.) upholding a decision of the Town of Plymouth Planning Board denying their subdivision application. They argue that the trial court erred in upholding the planning board's denial of their application because: (1) the board "engaged in impermissible ad hoc rule" and "decision making" when it relied upon an "overly broad" subdivision regulation; (2) the board relied on a subdivision regulation that does not specifically

authorize the board to regulate wetlands; (3) the board's regulation of wetlands is preempted by State statute; (4) the trial court unreasonably relied on certain evidence provided by a wetlands scientist; (5) the board's decision to reject the application based upon the proposed subdivision's impact on the wetlands was unreasonable; and (6) the board violated New Hampshire law by discussing the application at a hearing without notice to the applicants or the public. We address each of these arguments and affirm.

## I. Facts

The following facts are drawn from the trial court's order or are otherwise evident from the certified record. The plaintiffs own an undeveloped parcel of land in Plymouth with four other people (co-owners). The property's southwest border abuts Fairgrounds Road. Vehicles access the property through a "woods road," which originates from Fairgrounds Road near the property's southwest corner and runs northerly through the property.

In 2009, the plaintiffs sought to partition the property in probate court. Pursuant to a settlement stipulation, the parties agreed to subdivide the property into a southerly 50-acre parcel, to which the plaintiffs would take title after the subdivision approval, and a northerly 199-acre parcel, to which the co-owners would take title. Attached to the stipulation was a hand-drawn sketch of the property that depicts the proposed lot lines separating the two parcels.

As portrayed in the sketch, the smaller lot would encompass the southern portion of the woods road and most of the southwest boundary along Fairgrounds Road, while the larger parcel would retain a narrow corridor of land abutting Fairgrounds Road in the southwest corner of the property. The sketch also depicts a proposed new access to the larger parcel, wholly confined within its boundaries, beginning at Fairgrounds Road and running northerly until it intersects with the existing woods road. The settlement stipulation states, "It is understood that the sketch/plan is conceptual in nature and has not received State or Local Approvals." The stipulation required that the parties exchange quitclaim deeds within 30 days of receiving final subdivision approval.

The Probate Court (Boyle, J.) approved the settlement stipulation. For several years, however, the parties disputed the requirements of the settlement stipulation and, in 2016, the plaintiffs filed a motion for contempt against the co-owners in the probate division of the circuit court for failure to submit a subdivision application. The Circuit Court (Rappa, J.) denied the motion but ordered the parties to file a subdivision application with the Plymouth Planning Board no later than December 1 of that year. The parties submitted a subdivision application to the planning board in November. The proposed subdivision map was consistent with the sketch attached to the settlement

stipulation, including the proposed access way. The subdivision map also demarcated several wetlands areas.

During four public hearings between February and June 2017, the planning board heard from the parties to the application. At the initial hearing, planning board members, an abutter, and the co-owners raised concerns about the impact the proposed access way would have on the wetlands. As a result, the board and the parties discussed possible alternative locations for the access way. The board continued the hearing and asked the parties to renegotiate the proposed lot lines to permit the relocation of the access way east of the wetlands. At the next hearing on the application, which occurred in April, the plaintiffs informed the board that they would not agree to relocate the access way and asked the board to approve the application as submitted. The co-owners and abutter again expressed concern about the impact of the proposed access way on wetlands. The board decided to conduct a site visit and solicit a written "synopsis" from a wetlands scientist before reaching a decision.

In May, the board visited the property and, thereafter, received a letter from a certified wetlands scientist who had also inspected the property. At a subsequent public hearing that month, the board chair read the wetlands scientist's letter into the record, which stated, in relevant part, that the location of the proposed access way "has several large areas of wetlands and areas of high water table" and was not "suitable for the construction of a driveway." The letter further stated that another possible location for the access way, which has one large wetlands and "small areas with a high water table," would provide a "better alternative," and that the "best option would be to grant an easement on the existing access roadway." The letter also noted that the New Hampshire Department of Environmental Services (DES) would not "approve a wetlands crossing when there is an alternate location for an access or driveway with less wetlands impact." Based upon this information, the board continued the hearing and again asked the parties to "seriously consider" three options: (1) allow the co-owners to use the existing woods road; (2) relocate the boundary lines of the subdivision to accommodate the relocation of the access way "east of the major wetland," consistent with the wetlands scientist's second alternative; or (3) "run[] a right of way that accomplishes the same thing."

At the last hearing on the matter, on June 15, the plaintiffs informed the board that they would not agree to any of the proposed alternatives. The board voted unanimously to deny the application and subsequently issued a written decision, citing the concerns the board raised about the wetlands, the board's site visit, the wetlands scientist's letter, and the plaintiffs' rejection of the three alternatives presented to them as reasons for the denial. The decision further stated that the board relied upon Article VIII, Section B of the Town's subdivision regulations, which allows the planning board to "impose requirements upon the subdivider in order to preserve and protect the existing

3

features, . . . [and] other natural resources." Plymouth, N.H., Subdivision Regulations (PSR) art. VIII, § B (2002). The decision noted that the board considered wetlands to constitute "other natural resources" under the regulation.

The plaintiffs appealed the planning board's decision to the superior court, which upheld the decision. This appeal followed.

## II. Standard of Review

At the outset, we first explain the applicable standard of review. The trial court's review of a planning board's decision is governed by RSA 677:15 (2016), which provides that the trial court "may reverse or affirm, wholly or partly, or may modify the decision brought up for review when there is an error of law or when the court is persuaded by the balance of probabilities, on the evidence before it, that [the board's] decision is unreasonable." RSA 677:15, V. Thus, the trial court's review is limited. Trustees of Dartmouth Coll. v. Town of Hanover, 171 N.H. 497, 504 (2018). The trial court must treat the factual findings of the planning board as prima facie lawful and reasonable and cannot set aside its decision absent unreasonableness or an identified error of law. Id. The appealing party bears the burden of persuading the trial court that, by the balance of probabilities, the board's decision was unreasonable. Id. The trial court determines not whether it agrees with the planning board's findings, but whether there is evidence upon which its findings could have reasonably been based. Id.

Our review is similarly limited. We will reverse a trial court's decision on appeal only if it is not supported by the evidence or is legally erroneous. Id. We review the trial court's decision to determine whether a reasonable person could have reached the same decision as the trial court based upon the evidence before it. Id.

## III. Analysis

### A. Statutory and Regulatory Claims

We now address the plaintiffs' statutory and regulation-based claims, which require that we interpret the statutes and regulations governing the planning board's decision. We review the interpretation of statutes and regulations de novo, Petition of Sawyer, 170 N.H. 197, 203 (2017), and, accordingly, we are not bound by the interpretation of the planning board, Trustees of Dartmouth Coll., 171 N.H. at 508. We use the same principles of construction when interpreting both statutes and regulations. Petition of Guillemette, 171 N.H. 565, 568 (2018). Thus, in construing rules, as in construing statutes, where possible, we ascribe the plain and ordinary meaning to the words used. Id. We interpret legislative or administrative intent from

4

the statute or rule as written and will not consider what the legislature or administrative agency might have said or add language that the legislature or administrative agency did not see fit to include. Id. We construe all parts of a statute or regulation together to effectuate its overall purposes and to avoid absurd or unjust results. Id. at 568-69. Moreover, we do not consider words and phrases in isolation, but rather within the context of the statute or regulation as a whole. Id. at 569. When the language of a statute or regulation is plain and unambiguous, we need not look beyond the statute or regulation itself for further indications of legislative or administrative intent. Id.

The plaintiffs first argue that the trial court erred in upholding the planning board's reliance upon Article VIII, Section B of the subdivision regulations. Under Section B, captioned "Preservation of Existing Features," the planning board "may impose requirements upon the subdivider in order to preserve and protect the existing features, trees, scenic points, views, brooks, streams, rock out-croppings, water bodies, stone walls, boundary markers, other natural resources and historic landmarks." PSR art. VIII, § B. The board considered wetlands to fall within the phrase "natural resources" in Section B. The trial court agreed, concluding that wetlands are comparable to the other items enumerated in the regulation. The plaintiffs argue that the trial court's interpretation of the regulation is erroneous. We disagree.

The subdivision regulations define "wetlands" as "lands containing soils that are hydric, including freshwater and saltwater marshes . . . ." PSR art. III, § B; see also RSA 482-A:2, X (2013) (defining "[w]etlands" as "an area that is inundated or saturated by surface water or groundwater . . . ."). Although Article VIII, Section B does not include the term "wetlands," it does include the phrase "other natural resources and historic landmarks." PSR art. VIII, § B.

When viewed in isolation, "natural resources" is broader than the specifically enumerated items in the regulation. See Webster's Third New International Dictionary 1507 (unabridged ed. 2002) (defining "natural resources" as "materials (as mineral deposits and waterpower) supplied by nature"); PSR art. III, § B. However, the term, along with "historic landmarks," is accompanied by the word "other" and is preceded by the specifically enumerated features. PSR art. VIII, § B. This construction implies that the specifically enumerated features are either "natural resources" or "historic landmarks." PSR art. VIII, § B. These features include items found in nature that share similarities with wetlands: brooks, streams, and water bodies. PSR art. VIII, § B. In construing "other natural resources" as "embrac[ing] only objects similar in nature to those enumerated by the specific words," State v. Beauchemin, 161 N.H. 654, 658 (2011) (quotation omitted), we conclude that wetlands are similar in nature to the specifically enumerated natural resources in the regulation, and therefore fall within the phrase "other natural resources." See Home Gas Corp. v. Strafford Fuels, Inc., 130 N.H. 74, 82

(1987) (explaining that a statute's broader term "takes on the more specialized character of its neighbors").

Our conclusion is supported by another provision of the subdivision regulations. See Appeal of Old Dutch Mustard Co., 166 N.H. 501, 506 (2014) ("[W]e interpret statutes and regulations in the context of the overall statutory and regulatory scheme and not in isolation."). Article VI, Section M(12) includes "wetlands" under a category similar to "natural resources": "[s]ignificant natural features." PSR art. VI, § M(12) (requiring final subdivision plats to show "[s]ignificant natural features such as . . . wetlands"). In addition to wetlands, Article VI, Section M identifies items similar to the items identified in Article VIII, Section B. Compare PSR art. VIII, § B (naming "trees, scenic points, views, brooks, streams, rock out-croppings, [and] water bodies") with PSR art. VI, § M(12) (naming "woods, wetlands, streams, ponds, ledges, mines, scenic views, parks, [and] public open spaces"). Thus, our interpretation of "natural resources" as including wetlands is consistent with the regulations' inclusion of wetlands as a "[s]ignificant natural feature."

The plaintiffs, however, assert that Article VIII, Section B is so broad that it authorizes the planning board to deny an application "for any reason [it] deems fit" whenever the board identifies any kind of "existing feature" that may be disturbed by a proposed development. However, as discussed above, the enumerated items in the regulation limit the scope of "natural resources" to items similar in nature, which, we conclude, includes wetlands. Contrary to the plaintiffs' argument, the regulation confers only limited authority upon the board. Article VIII, Section B does not permit the board to unconditionally deny an application based upon its perceived impact on wetlands; rather, it states that the board may impose "requirements" on a subdivision application "to preserve and protect" wetlands. Thus, the regulation does not provide the planning board with unbridled discretion to deny an application on any basis, as the plaintiffs maintain.

The plaintiffs next argue that the planning board "effectively wrote a rule that does not exist," and therefore engaged in impermissible ad hoc rulemaking, by denying the application based upon a criterion not expressly identified in the regulation. Because "wetlands" does not expressly appear in the regulation, the plaintiffs contend it provides no notice to a subdivision applicant that wetlands would be a factor considered by the board. In essence, the plaintiffs argue that the planning board was not permitted to base its decision on a term that does not expressly appear in the regulation. We disagree.

We have never held that a planning board cannot act upon criteria that do not expressly appear in a regulation when the criteria fall within the plain and ordinary meaning of other terms within the regulation. See Dolbeare v. City of Laconia, 168 N.H. 52, 55 (2015). To the contrary, we have held that,

6

pursuant to the principle of ejusdem generis, when a general term is preceded by specific terms, then specific terms not expressly stated in the statute or regulation, but similar in nature to the specifically-enumerated ones, may fall within the general term. See Beauchemin, 161 N.H. at 658. Furthermore, given the nature of the specific terms within the regulation and the express inclusion of wetlands as a "significant natural resource" in another section of the regulations, we conclude that the regulation provides notice that wetlands could be considered by the board. See PSR art. VIII, § B, art. VI, § M(12).

The plaintiffs further contend that, in order for a municipality to have the authority to regulate wetlands, RSA 674:55 (2016) requires "wetlands" to be explicitly identified in the applicable regulation. Again, we disagree. RSA 674:55 provides:

> Wherever the term "wetlands" . . . is used in regulations and ordinances adopted pursuant to this chapter, such term shall be given the meaning in RSA 482-A:2, X and the delineation of wetlands for purposes of such regulations and ordinances shall be as prescribed in rules adopted under RSA [chapter] 482-A.

Although the statute defines the word "wetlands" when it appears in a municipal regulation, the statute contains no language that prohibits a municipality from regulating wetlands merely because the applicable regulation does not contain the term "wetlands." This conclusion, however, does not suggest that, outside the limited application of Article VIII, Section B, the Town may regulate wetlands without first enacting an ordinance or regulation pertaining to wetlands pursuant to the relevant enabling legislation. See, e.g., Derry Sr. Development, LLC v. Town of Derry, 157 N.H. 441, 447-48 (2008).

## B. Preemption Claim

We now consider the plaintiffs' preemption argument which asserts that state law preempts municipalities from regulating wetlands. The preemption doctrine flows from the principle that municipal legislation is invalid if it is repugnant to, or inconsistent with, state law. Forster v. Town of Henniker, 167 N.H. 745, 756 (2015). Preemption may be express or implied. Id. Here, the plaintiffs' argument is based upon implied preemption, which may be found when the comprehensiveness and detail of the State statutory scheme evinces legislative intent to supersede local regulation. Id. State law also impliedly preempts local law when there is an actual conflict between the two. Id. A conflict exists when a municipal ordinance or regulation permits that which a state statute prohibits or vice versa. Id. Moreover, even when a local ordinance does not expressly conflict with a state statute, it will be preempted when it frustrates the statute's purpose. Id. Because preemption is essentially a matter of statutory interpretation and construction, whether a state statute preempts local regulation is a question of law, which we review de novo. Id.

The plaintiffs do not argue that an actual conflict exists between Article VIII, Section B and a state statute. Cf. Lakeside Lodge v. Town of New London, 158 N.H. 164, 173-74 (2008). Instead, they argue that the planning board's interpretation of Article VIII, Section B "is contrary to, and frustrates the purpose of," the comprehensive regulatory scheme that governs the regulation of wetlands by DES. See RSA ch. 482-A (2013 & Supp. 2018). We disagree.

In enacting RSA chapter 482-A, the legislature gave DES the authority to regulate excavation, removal, fill, dredge, or construction in or on wetlands through a comprehensive permitting process. See RSA 482-A:3, :6, :11 (2013 & Supp. 2018). The legislature "found [it] to be for the public good and welfare of this state to protect and preserve its submerged lands under tidal and fresh waters and its wetlands . . . from despoliation and unregulated alteration." RSA 482-A:1 (2013). Article VIII, Section B allows the planning board to impose requirements on an application "in order to protect and preserve" existing natural resources, which, we have concluded, includes wetlands. The record demonstrates that the planning board requested that the plaintiffs adopt an alternative access way location to protect wetlands. We conclude that Article VIII, Section B, and the planning board's action pursuant to that regulation, serves, rather than frustrates, the purpose of RSA chapter 482-A.

Nevertheless, the plaintiffs point to provisions of RSA chapter 482-A that reference municipalities' involvement in the wetlands permitting and designation process. See RSA 482-A:11, III(a) (Supp. 2018); RSA 482-A:15, I(a)-(b), II (2013). They argue that, by specifically setting forth a municipality's involvement in these procedures, RSA chapter 482-A limits a municipality's regulation of wetlands to those provisions. We disagree.

RSA 482-A:11, III(a) states that, upon receiving written notification from a municipal body that the municipality "intends to investigate any notice received by it pursuant to RSA 482-A:3," DES cannot render a decision on a permit application until it "receive[s] and acknowledge[s] receipt of a written report" from the municipality or until 40 days from the date of filing of the notice. We agree with the plaintiffs that, pursuant to the statute, DES ultimately decides whether to approve or deny the application, even if that decision is contrary to the municipality's position. See RSA 482-A:11, III(a). However, we disagree that this provision implies that a municipality cannot also consider the impact to wetlands when determining whether to approve a subdivision application in accordance with the municipality's statutory authority. See RSA 674:35, I-II.

To be clear, the municipal action at issue here is the planning board's decision to condition its approval of the subdivision application upon the relocation of the access way, pursuant to the municipality's statutory authority over subdivisions and the placement of roads therein. See RSA 674:36, II(c) (allowing planning boards to adopt regulations to "[r]equire the proper

8

arrangement and coordination of streets within subdivisions in relation to other existing or planned streets or with features of the official map of the municipality"); see also RSA 674:36, II(e) (allowing planning boards to adopt regulations to "[r]equire suitably located streets of sufficient width to accommodate existing and prospective traffic"). The fact that RSA 482-A:11, III(a) gives a municipality the opportunity to investigate and comment on a wetlands permit — a procedure completely separate from municipal subdivision approval under RSA chapter 674 — does not, by itself, preempt the planning board's authority to regulate the development of subdivisions under RSA 676:35, I, and :36.

We reach a similar conclusion as to RSA 482-A:15. RSA 482-A:15, I(a) and II allow a municipality to "undertake to designate, map, and document prime wetlands lying within its boundaries," which it may then submit to DES. The statute provides procedures the municipality must follow if it chooses to designate prime wetlands. RSA 482-A:15, I to I-b. The plaintiffs contend that, because the statute requires a municipality to follow DES's regulations when designating prime wetlands, the statute prohibits the municipality from enacting any regulations relating to wetlands. To the extent that this provision preempts a municipality from enacting its own regulations, this preemption is narrow — by requiring a municipality to follow DES's rules when designating prime wetlands, this provision may prohibit a municipality from enacting procedures for designating prime wetlands that differ from DES's. It does not, however, expressly or implicitly prohibit a municipality from enacting and applying regulations relating to wetlands generally. Accordingly, we conclude that these two provisions in RSA chapter 482-A do not demonstrate an intent to preempt a municipality from considering wetlands in its subdivision approval process.

The plaintiffs identify another statutory provision that they argue "reaffirms the State's authority over wetlands" — RSA 482-A:11, IV(a) (2013). This provision states: "This paragraph shall not be construed so as to relieve [DES] of its statutory obligations under this chapter to protect wetlands not so mapped and designated." RSA 482-A:11, IV(a). This paragraph, however, details the strict procedures DES must follow when granting a permit over prime wetlands. See RSA 482-A:11, IV(a). Read in the context of the entire paragraph, RSA 482-A:11, IV(a) simply clarifies that the statute does not absolve DES of its responsibilities with respect to wetlands that are not designated as "prime." Nothing in this provision implies that DES has the sole authority to regulate wetlands in any manner, as the plaintiffs suggest.

The plaintiffs identify no other statutory provision that demonstrates a legislative intent to preempt municipalities from considering wetlands when determining whether to impose conditions upon a subdivision application. Accordingly, based upon the provisions cited by the plaintiffs, we conclude that

the planning board was not preempted from imposing a condition to protect wetlands here.

## C. Evidentiary Claims

Next, we address the plaintiffs' argument that the trial court improperly relied upon the wetlands scientist's letter to uphold the board's decision. The trial court determined that, "[o]n the basis of the [letter] alone, the Board could reasonably conclude [the proposed access way] would harm the wetlands at issue." The plaintiffs contend, however, that "there is nothing in the record demonstrating that, in its deliberations or otherwise, the Board relied in <u>any</u> manner" on the letter.

We have held that the superior court's review is not to determine whether it agrees with the planning board's findings, but to determine whether there is evidence upon which the findings could be reasonably based. <u>CBDA Dev., LLC v. Town of Thornton</u>, 168 N.H. 715, 720 (2016). Thus, a trial court's task is limited to determining whether the record contains evidence that reasonably supports the board's findings. <u>See</u> <u>id</u>. Nevertheless, the plaintiffs, relying upon our decision in <u>Dartmouth College</u>, claim that a trial court may not rely upon evidence in the record to uphold a planning board's decision when the record demonstrates that board members did not, in fact, rely upon that evidence when reaching their decision. <u>See</u> <u>Trustees of Dartmouth Coll.</u>, 171 N.H. at 505-08. This argument mischaracterizes our decision in <u>Dartmouth College</u>.

In <u>Dartmouth College</u>, the planning board denied the college's application for site plan approval by issuing a conclusory decision that set forth only the regulations upon which it relied in reaching its decision. <u>Id</u>. at 502. In upholding the board's decision, the trial court concluded that the board could have based its decision upon a finding that the plaintiff's proposed building "'would block an unreasonable amount of sunlight from reaching abutting homes.'" <u>Id</u>. at 503. We determined that the trial court's conclusion was unreasonable because the record, which included a transcript of the board's deliberations, did not support the trial court's finding that the board rejected the application based upon this "particular concern." <u>Id</u>. at 505-06. Thus, our decision in <u>Dartmouth College</u> focused on whether, in the absence of any express findings or reasoning in the board's written decision, the record supported the trial court's conclusion that the board based its decision on a particular <u>concern</u> — not whether the record demonstrated that the board considered a particular piece of evidence in the record that would support that concern. <u>See</u> <u>id</u>.

Unlike in <u>Dartmouth College</u>, the board's written decision in this case, and its members' comments during the public hearings, expressly explain the basis for its decision to impose the condition to relocate the access way and its subsequent denial of the application — specifically, its concern about the

proposed access way's impact on the property's wetlands. Evidence in the record — including the wetlands scientist's letter — supports this concern. Given the trial court's limited review, see CBDA Dev., 168 N.H. at 720, it was not unreasonable for the trial court to rely upon this evidence, which was relevant to the board's stated concern, to conclude that the evidence supports the board's decision.

The plaintiffs further argue that the trial court's reliance on the letter was unreasonable because one of the author's conclusions — that DES "will not approve a wetlands crossing when there is an alternate location for an access or driveway" — did not contradict the "uncontested evidence" that DES would have approved a permit allowing the proposed access way to cross over the wetlands if the board approved the application. The plaintiffs cite no authority, nor are we aware of any, that would prohibit the trial court from relying upon this evidence for such a reason. Moreover, the plaintiffs do not identify any evidence submitted to the planning board that supports their bald conclusion that DES would have issued a wetlands permit for the proposed access way, and we fail to see why such evidence would render the trial court's consideration of the letter unreasonable. This is not a case where an applicant's receipt of a state agency's approval creates a presumption that the application meets the regulation's requirements. Cf. Derry Senior Dev., LLC, 157 N.H. at 449-50 (concluding that the receipt of DES permit approval created a presumption that a septic system met the municipality's regulations where the regulations expressly allowed for such a system if it met the requirements of the State administrative code and if the applicant obtained the requisite DES permits). Thus, the trial court's reliance upon the letter as support for the board's decision was not unreasonable.

The plaintiffs next argue that the trial court erred in upholding the board's decision because the decision itself was unreasonable, given that the "uncontroverted evidence" before the board "was that the [proposed access way]'s potential impact upon the overall wetlands on the property was so small as to be virtually non-existent." More specifically, the plaintiffs assert that the board should have considered evidence that: (1) the nature of the anticipated use of the access way "would likely never affect wetlands," and, even if it did, such use would affect only a negligible fraction of the wetlands on the property; and (2) the settlement stipulation limited the use of the access way to that of a "woods road," which would have little impact on wetlands.

On appeal, our review of a trial court's decision is limited — we determine whether a reasonable person could have reached the same decision as the trial court based upon the evidence before it. Trustees of Dartmouth Coll., 171 N.H. at 504. It is undisputed that the proposed access way would traverse some portion of the wetlands on the property. Furthermore, the evidence included the opinion of a certified wetlands scientist — based upon her personal observations of the property — that the proposed location for the

11

access way was not appropriate due to the presence of the wetlands, and that other alternatives that would have a less significant impact on the wetlands existed. These facts, in addition to the board members' personal observations of the property and the testimony of the concerned abutter, reasonably support the trial court's conclusion.

Although the settlement stipulation provided that the co-owners' "access over [the proposed access way] shall be in the form of a 'woods road,'" the plaintiffs identify no evidence that supports any of their assertions that the proposed access way would have no effect, or only a negligible effect, on the wetlands. We acknowledge that the record includes a statement from the surveyor who drafted the proposed subdivision map suggesting that the anticipated use of the access way "is a forest route primarily, but a woods road could also be constructed," but this statement fails to address the question of whether the construction of a "forest route" or "woods road" would affect the wetlands. Nor does it necessarily inform a fact finder as to how the access way would be used in the future. Regardless of the representations made by plaintiffs' counsel to the board as to the limited nature of the future use of the proposed access way, these representations were not supported by any evidence and were disputed by the co-owners. Thus, the plaintiffs' unsupported assertions as to the future use of the proposed access way fail to demonstrate that the trial court's decision was not supported by the evidence.

D. Procedural Claims

Finally, the plaintiffs argue that the trial court should have reversed the planning board's decision because the board discussed the application at a public hearing on June 1 without providing notice to the plaintiffs, in violation of RSA 676:4 (Supp. 2018). RSA 676:4, I(d)(1) requires the planning board to notify a subdivision applicant of a public hearing on the application. However, RSA 676:4, IV provides that judicial review of the planning board's procedures "shall not be subjected to strict scrutiny for technical compliance." The statute requires "the reversal of a planning board's actions by judicial action only when such defects create serious impairment of opportunity for notice and participation." RSA 676:4, IV. The trial court found that the board's lack of notice did not treat the plaintiffs unfairly or unreasonably, nor did it "seriously impair [the plaintiffs'] participation in the Board's consideration of the application."

The transcript of the June 1 hearing reveals that the board members engaged in an informal discussion relating to the access way alternatives the board had proposed to the parties at the prior hearings. While board members briefly expressed their opinions on the matter, the board did not request or hear any comment from members of the public on the application and did not render a decision on the application. We agree with the trial court that the plaintiffs failed to demonstrate that the lack of notice seriously impaired their

12

participation in the proceedings.  RSA 676:4, IV.  The board members did not reveal any information or opinions during the June 1 hearing that they did not communicate at the public hearings at which the plaintiffs or their counsel were present.  Moreover, the board did not render its decision until the end of the public hearing on June 15, after hearing the plaintiffs' arguments that related to the very concerns discussed by the board on June 1.  Given that the board held four public hearings on the application in which the plaintiffs had the opportunity to present arguments and evidence in response to the board's concerns, we conclude that the trial court reasonably declined to reverse the planning board's decision upon this procedural ground.

## IV.  Conclusion

Accordingly, we affirm the trial court's decision upholding the planning board's denial of the subdivision application.  All arguments the plaintiffs raised in their notice of appeal, but did not brief, are deemed waived.  In re Estate of King, 149 N.H. 226, 230 (2003).

Affirmed.

HICKS and HANTZ MARCONI, JJ., concurred.